CORNELIUS HEDGES, respondent, *v.* COUNTY COMMISSIONERS OF LEWIS AND CLARKE COUNTY, appellant.

FEES OF PROBATE JUDGES.— The act of May 3, 1873, provided for fees of probate judges in matters of probate jurisdiction, and further provided that "for all civil cases, and other than probate matters, the same fees as are allowed to clerks of the district court in similar cases." *Held*, that the fees provided by act of January 12, 1872, for clerks of the district court, became part of the fees of probate judges for all cases "other than probate matters," and such fees were not abolished by the act of February 21, 1879, substituting a salary for fees as compensation of clerks of district court. Fees in criminal cases, though not specifically mentioned, are necessarily included in that provision for cases *other than probate matters*, and were such as by the act of January 12, 1872, were provided for clerks of the district court. No other construction gives consistent force to all the language of the statute.

COUNTY COMMISSIONERS CANNOT EXERCISE JUDICIAL POWERS — *Certifying probable cause.*— The act of February 13, 1874, which confers on county commissioners the power to disallow any bill of costs in cases whose prosecution they might judge was not required by the public welfare, must be construed in connection with sec. 410 of the Criminal Practice Act, which provides that in cases less than felony, where defendant is discharged, the costs shall be taxed to the prosecution, or person on whose oath the action shall have been instituted, unless the officer trying the case shall certify that there was probable cause, in which event they shall be paid by the county where the offense was committed. This certificate of probable cause is a judicial act, and can only be reviewed by judicial authority. County commissioners have no such judicial powers, nor by the organic act can the legislature confer such powers upon them.

*Appeal from Third District, Lewis and Clarke County.*

T. J. LOWREY, Attorney General, for appellants.

The transcript shows, and it is conceded, that this action was based upon a demand made by Cornelius Hedges, then probate judge of Lewis and Clarke county, against said county for services as probate judge in seventeen criminal cases tried or "heard" between August 4 and December 15, 1880, amounting, as claimed, to $348. Of this claim the county commissioners allowed and paid

$51, being $3 for each trial, and disallowed the balance, $297. From this order disallowing $297, Judge Hedges appealed to the district court. The district court, on the face of the papers, entered a judgment for the appellant, requiring the commissioners to pay the additional $297 and costs, from which judgment this appeal is taken.

It is to be borne in mind that the commissioners have allowed and paid the seventeen items of $3 each for trial of these cases, usually charged in the bill as "hearing, $3."

I submit the following propositions as true:

There is not, nor was there at the time the account and claim accrued, any law whatever authorizing the probate judge or clerk, or both, or either of them, to receive any compensation in criminal cases of any character, from either defendant, complaining witness nor the county, except the sum of $3 for trying each case. The only fee bill then or now in force relating to probate courts and clerks was the act of May 3, 1873, R. S. pp. 532–3, sec. 588 (erroneously noted as May 3, 1874), which says: "The probate courts shall receive the following fees, in probate matters." (Here is inserted a long list of such fees.) Solemnizing marriages, ten dollars; *for all civil cases and other than probate matters* the same fees as are allowed to clerks of district courts, in similar cases; for trying each case, three dollars.

I ask this court to observe the form and punctuation of this sentence, and say what its grammatical English meaning is.

I contend that the words as they stand, "for all civil cases" and "other than probate matters" the same fees, etc., mean no more than they say — civil cases as contradistinguished from criminal cases. To enable the probate court to resort to the district clerk's fee bill, in any given case, it must be not only a civil case, but also it must not be a probate case, already provided for. If the legislature intended it to cover criminal cases, they would not

have said civil cases, or would have used the word "or" instead of "and."

This sentence merely authorizes the probate judge or clerk to tax costs in cases arising within the jurisdiction against litigants in civil actions. Previous to this act of February 13, 1873, probate judges were entitled to no fees in criminal cases. See fee bill, Codified Statutes, 1871-2, pp. 423-4.

I apprehend that this statute needs no further interpretation than to apply to it the ordinary rules of English grammar to arrive at the conclusion I have stated; and that as to the claim asserted against the county in this action there is no authority in law for its allowance, nor has there ever been.

It is conceded that at the time this act of February, 1873, passed there was an act authorizing the clerks of the district courts to receive fees in civil, and in some instances in criminal, cases, corresponding to the amounts claimed in the bill by the respondent in this case. But the act granting fees to the clerk of the district courts, of February, 1879, repealed this.

I contend that when that act was repealed the whole subject with all of its contingencies fell to the ground. The effect of a repealing statute is to obliterate the statute repealed as completely from the record as though it had never been passed. If the statute repealed authorizes a recovery of a penalty, the repeal puts an end to all actions for penalties under it pending when the repeal takes effect. *Yeaton* v. *U. S.* 5 Cranch, 281.

The same rule applies to all cases, both criminal and civil, pending when the repeal takes effect. It defeats even the jurisdiction of a court in a case pending. See Sedgwick on Statutory Law, 129-134.

In this case the statute authorizing the district clerk to receive fees such as mentioned in the judge's bill had long been repealed before the services were claimed to have been rendered, save the items of $3 for trying each

case, paid and allowed.   Hence we see that no such fees are allowed the probate judge, and that the fee bill under which he claims was repealed years before the demand accrued.

I contend, further, that there is no law authorizing or permitting the county commissioners paying the probate judge anything in case the proceeds of his office amount to $500 per year.   R. S. pp. 487, 488, sec. 383. It is not contended that his emoluments did not reach that sum; if not, then his claim should be accompanied by proof to that effect.

Regardless of the foregoing, the statute constitutes the county commissioners absolute judges and arbiters as to whether they will allow even the $3 fee, or any other fee.   They are the judges as to whether petty criminal prosecutions shall be paid for by the county or not.   They have an absolute discretion, and it will devolve upon any appellant to show an abuse thereof before their action can be overruled by courts.   R. S. p. 538, sec. 610.

Sec. 409, pp. 340, 341, Revised Statutes, provides one class of cases for which the county shall pay the costs; but even were the probate judge's costs taxable under this section, the record does not disclose any compliance with its requirements.   When the law requires an execution to issue, it is no compliance to certify that it would be useless, as in this case.   The judge and district attorney must both certify to the correctness of the cost bill before the commissioners are authorized to allow it. This must apply as well to the probate as the witnesses' or sheriff's costs.

Section 410 provides for cases less than a felony; in cases where the defendant is discharged.   Here the commissioners are strictly forbidden to pay any costs, except such as are expressly compensated by law.   Of this class the bill is mostly made up, probably, but the record nor bill does not disclose the fact, not a single item or case. It is impossible to determine under what section the bill is intended to come.

Section 411 provides for payment of costs in cases of felony — shall be taxed as thereafter provided, *i. e.*, sec. 419, by the district clerk. These do not come under that head.

It is the evident intention that costs in criminal cases shall be strictly scrutinized by the commissioners. It is the duty of all officers or others claiming costs to accompany their bills with such explicit dates as will enable the commissioners to determine the nature of the action and all of the proceedings had; whether the action was prosecuted for the good of society, by the proper officers, or merely to accumulate costs.

In these seventeen cases nothing of the kind appears. Look, for instance, at the first case on the bill. "Filing complaint and docketing case, $2.50." Warrant, $1; subpœna, $1.50; filing same, 80 cents; swearing three witnesses, 75 cents; entering two orders, etc.

I contend that any county that will be obliged to pay bills thus made out and authenticated must necessarily be bankrupt by the practice. Such is not the intention of the legislature. If probate judges' bills must be paid in that way other officers' must also; they all come under the same provisions. I contend that, providing these absurd items charged in this bill were payable in fact from the county treasury, there is a fatal defect in the mode of presenting and proving the account, and the commissioners under their oaths could not allow it, even if they believed such items might be payable if properly presented and certified or proven.

Sec. 357, p. 482, Revised Statutes, expressly provides, "No account shall be allowed by the county commissioners unless the same be made out in separate items and the nature of each item stated, nor unless the same be verified by affidavit, showing that the said account is just and wholly unpaid."

How, under this statute, could the commissioners allow this bill, even although the items were chargeable to the county?

CORNELIUS HEDGES, *pro se.*

The respondent accepts the introductory statement of appellants as substantially correct, except that it inferentially states that the judgment of the court below was rendered in favor of respondent without argument or consideration, as a mere formal matter, whereas, in truth, every point here and now presented was then presented, fully argued and duly considered by the court.

1. Appellant claims that at the time the account and claim accrued on which this action is based, there was no law authorizing the probate judge or clerk to charge or receive any compensation in any criminal case from defendant or county, except $3 for trying each case.

The first organic act of the territory gave to probate courts no civil or criminal jurisdiction, save in purely probate matters, but the territorial legislature made all probate judges justices of the peace, styling them "probate justices." And the universal practice since the organization of the territory in every county till the act of May 3, 1873, has been to allow probate courts the same fees in criminal matters as were paid to justices of the peace. The amendment of March 2, 1867, to the organic act expressly confers upon the probate courts criminal jurisdiction in cases not requiring the intervention of a grand jury. From that time the term "probate justice" disappears. The fees allowed to justices of the peace continued to be allowed to probate courts for criminal business transacted, until the act of May 3, 1873, referred to by appellants, changed the standard, and thenceforward allowed the same fees as paid to the district court clerks in similar cases.

The claim of respondent rests securely upon the "grammatical English meaning" of the language used in the said act of May 3, 1873, and which remained unchanged and unrepealed at the time respondent's claim originated.

The words, "for all civil cases," cover fully one department of business transacted in the probate courts,

while "probate matters" covers another just as distinct class; while the words "and other than" allude as distinctly and directly to still other matters than "civil cases" and "probate matters," as language can be made to express it. The interpretation asked for by appellant would expunge the word "and" altogether from the sentence referred to, and treat it as if it read thus: "for all civil cases other than probate matters," an interpretation clearly never intended.

The subsequent clause, "for trying each case, three dollars," was made necessary by the fact that clerks of the district court did not try cases, and hence their fee bill furnished no standard; and still further was this needed because by the Bannack statute the fee of a justice was $4 for trying a criminal case, and only $3 for a civil case.

If the construction of this provision of statute were even doubtful, the interpretation asked for by the appellants would involve the gross injustice of the legislature devolving new and heavy duties upon certain officers, receiving only fees and no salary, making it a misdemeanor (see sec. 513, p. 353, Revised Statutes) to refuse to discharge the duties for which they could receive no compensation.

Until the act of May, 1873, the fee bill of justices of the peace in criminal matters was indirectly and impliedly the standard for charges by probate courts. Since that act, at least during the time that respondent's bill was made, the fee bill of the clerk of the district court was expressly the standard for charges by probate courts, in all matters "other than probate matters," whether civil or otherwise.

2. Appellants concede that the fees charged by respondent were those allowed clerks of district court when the act of 1873 was passed, but claim that the subsequent enactment of a new method of compensation for said clerks, and the repeal of the old fee bill, changed the interpretation that had been given to the law of 1873 for

six years after its adoption.   To state the objection ex-
poses its weakness.

Instead of providing a special fee bill for probate courts
transacting other than probate business, reference is
made to a particular fee bill then existing.   It is the same
as if all the items had been specified on the familiar prin-
ciple: " *Certum est, quod certum reddi potest.*"   It may
not be the most approved method of enacting laws, but
the national and state statutes are full of examples of the
same kind.   The meaning once attached remained un-
changed till the act of May 3, 1873, was itself repealed.
No canons of interpretation recognized "*in foro juris,
seu rationis,*" could possibly be found to lend even color
to the theory propounded by the appellants.

3. Again, it is claimed by appellants that there was no
law authorizing the commissioners to pay the probate
judge for any business done, provided the proceeds of his
office amount to $500 per annum.

Reference to the section of Revised Statutes mentioned
by appellants, and following the subject matter back
through all the codes to its first enactment by the Ban-
nack legislature, shows that the restrictive proviso applies
always and only and expressly to *probate* business, about
the nature of which there can be no controversy.

4. Appellants claim that by sec. 610, p. 538, Revised
Statutes, it is a matter discretionary with the commis-
sioners whether or not to allow costs to any extent in
any criminal case.

If such grant of discretionary power has any signifi-
cance whatever in view of the prior, more explicit and
mandatory provision contained in sec. 410, p. 341, Revised
Statutes, it cannot certainly be claimed that such discre-
tionary power may be exercised arbitrarily, without any
guide, information, investigation or restraint.   Can pro-
bate courts, more than any other, be held responsible for
deciding that a case has no merit before hearing the evi-
dence?   And after having heard and determined, the

certificate of the court that tried the case ought to determine whether there was reasonable cause for instituting the action, rather than the uninformed and arbitrary discretion of the county commissioners. The district attorney began every case mentioned in respondent's bill, and if any officer should be held responsible in damages for instituting frivolous suits, it should certainly be the officer who knows part of such case before it is brought into court, rather than the judge, who only gains his information from the trial. But the district attorney has been paid for his services in these identical cases, and it really looks as if the commissioners, by allowing and paying $3 for one item of cost in each of these cases, had estopped themselves from disallowing any part of the costs on the ground that the cases were frivolous.

The scrutiny that the law contemplates and enjoins is exercised in seeing that items are not allowed for which the law makes no allowance, nor at rates greater than fixed by law.

The statute would not, surely, allow an appeal, as it now does, if it was intended that the discretion of the commissioners might be exercised arbitrarily and unchecked.

The cases charged in respondent's bill are of the class mentioned in sec. 410, p. 341, Revised Statutes, to which only the certificate of the court is required, as the probate court only has jurisdiction in such cases.

6. It is claimed that "the date of items must be so explicit as to enable the commissioners to determine the nature of the action." We fail to comprehend the meaning of this criticism, or how a *date* can make anything but the matter of time explicit. Nor do we think that every item needs a separate certificate that it was done for the good of society. The bill shows sufficiently for itself whether it is properly itemized and certified.

WADE, C. J. The respondent, claiming certain fees as probate judge of Lewis and Clarke county, presented

his account therefor to the board of commissioners of the county, and the same was disallowed, and the respondent appealed to the district court, where he recovered judgment for the amount of his claim, from which the board of commissioners appeal to this court.

It is admitted that the probate court had jurisdiction to try the cases in which these fees were charged, and that the items thereof are correct, providing the act of the legislative assembly of January 12, 1872, in relation to fees of clerks of the district court, is in force and applicable to the fees of a probate judge.

The act referred to (see Codified Statutes, p. 420) prescribed the fees that clerks of the district court should be entitled to charge for and receive.

The act of May 3, 1873 (Rev. Stat. p. 531), provides for the fees of probate judges in matters pertaining to their probate jurisdiction, to which is added the following provision: "For all civil cases, *and other than probate matters*, the same fees as are allowed to clerks of district court in similar cases."

By an act of February 21, 1879, the legislature provided that the clerks of the district court should receive a salary for their services, and repealed all acts and parts of acts relating to the fees of clerks of district courts. This act did not repeal that of May 3, 1873, wherein it is provided that probate judges, for all civil cases and other than probate matters, shall be entitled to receive the same fees as clerks of district courts in similar cases. Its purpose was to provide a salary for the clerks, and, as to them, to repeal the fee bill contained in the act of January 12, 1872. The act of May 3, 1873, remaining in force as to the fees of probate judges, and necessarily referring to the act of January 12, 1872, and, as it might be said, forming part thereof, it follows that, as to the fees of probate judges, the act of January 12, 1872, is still in force. It cannot be repealed as to probate judges while the act of May 3, 1873, is in force. Its repeal as to clerks

of district courts, while that act remains in force, does not repeal it as to probate judges.

The fees charged for in the account of the probate judge herein arose in criminal cases, and it is contended by appellants that the act of May 3, 1873, does not cover, or is not applicable to, fees in criminal cases. The act provides first for the fees in probate matters, then for fees in civil cases, and then for fees in all other cases, which must necessarily include the fees in criminal cases as specified and provided for in the act of January 12, 1872. Any different construction would require us to say that probate judges should receive no fees in any other than probate matters and civil cases, which would be a plain misinterpretation of the legislative intent.

In construing a statute effect must be given to all its language, if possible, and so, giving effect to the language used in the act of May 3, 1873, we hold that it authorized probate judges to charge for and receive such fees in criminal cases as the act of January 12, 1872, provided for and authorized the clerks of district courts to receive for similar services.

It is further contended that, by virtue of an act entitled "An act to curtail certain expenses," approved February 13, 1874, the board of county commissioners is given the arbitrary power and discretion to allow or disallow the fees of probate judges in the cases therein named, which includes the class of fees the respondent seeks to recover in this action.

That act provides as follows: "That the county commissioners of the several counties of this territory, when any bill of costs of any justice of the peace, constable, marshal, sheriff or other officer of this territory, or of any county, township or precinct therein, is presented to them for fees, in any case of misdemeanor not prosecuted by indictment, for allowance, shall not allow the same unless, in their judgment, it appeared at the time

such cause was prosecuted and said fees accrued to said officers that the public welfare and good order and peace of the territory would be promoted by such prosecution; nor shall they, in any event of conviction, allow any fee or cost of any officer out of the public funds, until they are satisfied that every reasonable effort has been exhausted to collect out of the property of the defendant or defendants convicted such fees."

This statute must be construed in connection with section 410 of the Criminal Practice Act, which provides: "If any person charged with any offense less than a felony shall be discharged by the officer taking his examination, the costs shall be paid by the prosecutor or person on whose oath or information the same shall have been instituted, unless the officer shall certify that there was probable cause for the prosecution, in which event they shall be paid by the county in which the offense was committed."

The certificate of probable cause mentioned in this section is a judicial act, and cannot be reviewed, except by judicial authority. The county commissioners have no judicial powers. They cannot, in any sense, exercise the functions of a court. By the organic act, the judicial powers of the territory are vested in the supreme court, the district courts, the probate courts, and courts of justices of the peace, and any statute of the territory that attempts to clothe county commissioners with judicial authority is necessarily null and void. They cannot be given authority or discretionary power to say when the criminal laws of the territory shall take effect or be enforced. They have no authority to declare that a statute giving an officer certain designated fees for services performed by him is a nullity. When any person charged with a misdemeanor is discharged by the officer taking the examination, and such discharge is accompanied with a certificate of probable cause, the county in which the examination is held thereby becomes liable for the

fees provided by law consequent upon such examinations, and it is the duty of the board of county commissioners to audit and pay the same.

The judgment is affirmed, with costs.

*Judgment affirmed.*