# HELENA WATER WORKS COMPANY, Appellant, *v.* CITY OF HELENA et al., Respondents.

(No. 1,702.)

(Submitted January 24, 1902.    Decided November 10, 1902.)

*Municipal Corporations—Debt Limit—Claims — Special Appropriations—Assignment of Funds.*

1. Political Code, Sec. 4811, requires all demands against cities to be submitted to the council and, if found correct, allowed, and an order made that the demand be paid on a warrant on the treasurer, specifying the purpose, by what authority it is issued, and out of what fund it is to be paid. Section 4812 declares that all such accounts shall be itemized and verified by affidavit, and that the council shall have no authority to allow any claim or demand not so presented. *Held,* that where a city had exceeded its debt limit prescribed by Constitution, Art. XIII, Sec. 6, it could not incur an indebtedness not payable from a specially authorized tax, but payable from funds previously appropriated, under an agreement that the claimants should accept warrants in payment of their claims, and that if, for any reason, the warrant should not be paid, the city should not be liable therefor.
2. The payment of such claims on the theory that the appropriation by ordinance was an assignment of the funds so appropriated for the payment of the claims was unauthorized.

Mr. Justice Pigott, dissenting.

*Appeal from District Court, Lewis and Clarke County; J. M. Clements, Judge.*

Action by the Helena Water Works Company against the city of Helena and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

*Messrs. Clayberg & Gunn, and Messrs. Carpenter & Carpenter,* for Appellant.

*Mr. Edward Horsky, and Messrs. Word & Word, for* Respondents.

MR. JUSTICE MILBURN delivered the opinion of the court.

On April 4, 1901, plaintiff commenced an action in the district court to enjoin defendants from allowing or ordering paid any claims or demands presented for materials furnished or services rendered to said city during the time that it has been or may be indebted in excess of 3 per centum of the assessed value of the taxable property, as ascertained by the last assessment, such excess being admitted. Plaintiff excepted expressly from its prayer any desire to have the city enjoined from paying certain claims of plaintiff for water furnished and to be furnished to said city.

The pleadings and proofs are so voluminous, and there is so much repetition in them, that we shall not set them out in full.

On December 17, 1900, this court, in the case of *State ex rel. Helena Water Works Co.* v. *City of Helena,* 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. .Rep. 453 (hereinafter referred to as the "Helena Case"), held that a certain contract made by the city with the company to furnish water was void. There were two questions answered by the court in that case: (1) "Did the city of Helena, by entering into the contract for a water supply, incur an 'indebtedness,' within the meaning of that term as it is used in Section 6 of Article XIII of the Constitution of Montana?" and (2) "Does the amount now due and unpaid for water furnished to the city under the contract before us constitute an 'indebtedness,' within the meaning of the term as used in that section of the constitution above considered?" Said Section 6 of Article XIII of the Constitution, above referred to is as follows: "No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three per centum of the value of the taxable property therein, to be ascertained by the last assessment for the state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void: *provided, however,* that the legislative assembly may extend the limit mentioned in this

section, by authorizing municipal corporations to submit the
question to a vote of the taxpayers affected thereby, when such
increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own
and control said water supply and devote the revenues derived
therefrom to the payment of the debt." Each question was, in
the opinion referred to, answered in the affirmative. The court
added, *obiter,* certain suggestions to the city as to how it might
continue to do business and pay out money for "necessities to
sustain corporate life." It appears that the city, acting upon
these suggestions, has endeavored to operate on what is termed,
in the remarks of the court made *obiter* and in the briefs of
counsel, as the "pay-as-you-go plan." It was admitted that at
the times referred to in the *Helena Case* the city was indebted
beyond the constitutional limit.

Since the date of the decision of this court in the case referred to, the city has, it alleges, employed men and purchased
materials with the understanding that the parties with whom it
dealt should not and would not hold the city liable or responsible
in any degree for the stipulated value of the services or materials, but would accept warrants upon the city treasurer, drawn
in the usual form, as shown in the exhibits in the evidence; the
city having by an ordinance made an appropriation of sufficient
funds to meet all expenses when they should arise; no warrant
to be drawn unless there should be actual cash in the treasury
to meet such warrants. The city also asserts (and there is some
proof to support the assertion) that there was and is an understanding with all creditors that the *warrant* should be and would
be accepted as cash, and that the city should not be responsible
if the treasurer should, for any reason, fail to pay the warrant.
It is alleged, in effect, also, that the said appropriation by ordinance is an assignment of funds for the payment of such claims.
There is a reference to a city library fund, raised by a specially
authorized tax, and to debts incurred and to be paid out of such
fund.

The plaintiff alleges that the services and materials were ren-

dered and furnished without any understanding that the creditors would accept an assignment of the taxes to be levied, or an assignment of any fund in the treasury in payment of such claims, and that no such assignment was ever made. Plaintiff alleges enough to show it to be a party in interest.

The Political Code, in Sections 4811 and 4812, which are as follows,—"Sec. 4811. All accounts and demands against a city or town must be submitted to the council, and if found correct must be allowed, and an order made that the demand be paid, upon which the mayor must draw a warrant upon the treasurer in favor of the owner, specifying for what purpose and by what authority it is issued, and out of what fund it is to be paid, and the treasurer must pay the same out of the proper fund. Sec. 4812. All accounts and demands against a city or town must be presented to the council, duly itemized and accompanied by an affidavit of the party or his agent, stating the same to be a true and correct account against the city or town for the full amount for which the same is presented, and that the same accrued as set forth, and with all necessary and proper vouchers, within one year from the date the same accrued; and any claim or demand not so presented within the time aforesaid is forever barred, and the council has no authority to allow any account or demand not so presented, nor must any action be maintained against the city or town for or on account of any demand or claim against the same, until such demand or claim has first been presented to the council for action thereon,"—prevents the city being put on a cash basis, or on a pay-as-you-go plan, such as suggested by the city as its intention to establish. The Code requires the city council to audit all claims and demands evidenced by itemized bills, sworn to, before any payment is made. A claim is presented, and after an auditing (that is, a hearing) by the guardians of the *city* treasury, not of other people's money, already assigned and set over to them, the account is allowed and ordered to be paid, if these guardians find that there is *a debt against the city which is due and payable.* In no other way may a claim against a city be paid. If the service

and material men have no demands against the city, as contended by the city in the present case, and they do not claim that *the city is indebted to them,* then they may not file claims with the council for allowance and payment, and they can never get a cent. The city does not owe them anything, and the council has no business to hear them, or to order any warrant to issue for payment. If there be *indebtedness,* and the city is the one indebted, then the claimants shall so swear, and have their demands audited and established as part of the indebtedness of the city. Such is the law, and such is the only conclusion to be drawn from the reading of the law. As we have said, in no other way can a claim be established and paid, as the law now stands. Expediency and emergencies arising out of extravagance or misfortune have, we think, led and forced city officials in Montana and elsewhere to adopt a plan such as suggested by counsel.

If the law did not require *indebtedness* to be first incurred, and thereafter to be found in the way fixed by the Code, *supra,* then, with money to pay on hand, there could be instantaneous cash transactions, perhaps such, and under such conditions, as would not create debts.

The *Great Falls Case (State ex rel. Great Falls Water Works v. City of Great Falls,* 19 Mont. 518, 49 Pac. 15) is not in point as an authority in support of the contention of the defendants in the case at bar. That case is authority for the proposition that a contract does not create an indebtedness, such as is prohibited by the constitution, when the city making the contract is authorized by statute to levy a special tax expressly for the payment of such contract liability. In such a case the liability is special, and is limited to the amount of the special tax levied, and the property and the credit of the city are not liable to the creditor holding claims payable out of that tax. The city library fund, referred to in the pleadings, is raised by special tax for library purposes. The liabilities referred to in the case under consideration now, and the payment of which the plaintiff seeks to enjoin, are general, and the city cannot escape lia-

bility by itself appropriating general funds and calling such an appropriation an "assignment." This is clear from the reasoning of the opinion rendered by this court in the *Helena Gase*, which opinion we have no idea should be disapproved. The learned justice who wrote that opinion went exhaustively into the matter, and compared the many authorities bearing upon the subject, both those of our own court and those of other courts of last resort, and said: "In view of these holdings, we can conceive of no possible ground for the supposed distinction between an indebtedness for current expenses, payable out of the current revenues, and one for the payment of which no provision has been made, and for which the city is generally liable."

It is not for us to suggest to unfortunate cities or people how they may escape the consequences of misfortune or extravagance. We are to declare the law as we find it.

The court below erred in refusing the injunction prayed for. Such injunction should not prevent the city from paying all valid claims against funds raised by tax especially authorized by law for the purpose of paying such claims. No other logical conclusion can be arrived at after reading the Code, *supra*, and the decision in the *Helena Case*. The question of the validity or nonvalidity of the claims of plaintiff against the city, referred to in the pleadings, is not before us for decision.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY: I concur. I desire to say further that I cannot see any escape from the conclusion reached in the *Helena Case*. The section of the constitution discussed and applied therein is clear and explicit in its provisions,—so much so that it does not admit of but the one construction. To undertake to assign to it any other or different meaning would be an attempt to fritter away the wholesome restraint imposed for wise purposes upon the legislature, and thus upon all municipal corporations created by it. Nor is there any escape

from the conclusions of MR. JUSTICE MILBURN as to the proper construction of the provisions of the statute touching the payment of claims against the municipality. It is the duty of the courts to declare the law as it is, and not to exercise their ingenuity in trying to devise means by which its clear and explicit injunctions may be evaded. What is said in the latter part of the *Helena Case* is *obiter,* and may not be treated as of any binding force whatever.

MR. JUSTICE PIGOTT (dissenting): I believe the decision in *State ex rel. Great Falls Water Works* v. *City of Great Falls,* 19 Montana Reports, 518, (49 Pac. 15), to be correct in matter of substantive law, and that it does not support the contention of the defendants in the case at bar. I believe, also, the course of reasoning and the conclusions announced upon the questions presented in *State ex rel. Helena Water Works Co.* v. *City of Helena,* 24 Montana Reports, 521, (63 Pac. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453), to be correct; and that the opinion should not be disapproved. Thus far I agree with my brethren. But I do not concur with them in the view that Section 6 of Article XIII of the Constitution prohibits, or that the existence of Sections 4811 and 4812 of the Political Code prevents, the payment of the claims involved in the present controversy. I am inclined to the opinion that these claims are not, under the circumstances shown by the evidence, debts of the city, within the meaning of the constitutional inhibition; nor do I think that the opinion in the *Helena Case,* when applied to the facts of that case, and read as a whole, either declares or suggests that such claims would increase the indebtedness. I think the court below was right in refusing the injunction; I therefore dissent from the judgment of reversal.

Rehearing denied December 9, 1902.