FARBO, PLAINTIFF, v. SCHOOL DISTRICT No. 1 OF TOOLE COUNTY ET AL., DEFENDANTS.

(No. 7,203.)

(Submitted November 8, 1933. Decided December 16, 1933.)

[28 Pac. (2d) 455.]

*Mr. Louis P. Donovan,* for Plaintiff, submitted a brief and argued the cause orally.

*Mr. Raymond T. Nagle, Mr. C. J. Dousman,* Assistant Attorney General, and *Mr. Henry McClernan,* County Attorney of Toole County, for Defendants, submitted a brief; *Mr. Dousman* argued the cause orally.

534

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Section 6 of Article XIII of the Constitution of Montana provides: "No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggre-

gate exceeding three (3) per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void. * * * ''

Debt limit provisions of this type, the conditions which called them forth, and the evils they were designed to remedy, were well known to the members of our Constitutional Convention. By reason of public extravagance the people of many states, enmeshed in debt well-nigh to the point of bankruptcy, had determined to put an end to the danger by setting a limit to expenditures in their Constitutions. (Note to *Hagan* v. *Commissioner's Court,* 37 L. R. A. (n. s.) 1061; *Winchester* v. *Nelson,* 175 Ky. 63, 193 S. W. 1040.)

The framers of our Constitution, many of whom came from states with similar provisions, heeding the experience of older communities, sought to profit by their example by writing into the fundamental charter the foregoing section and similar restrictions. The people adopted the Constitution with the declaration that ''the provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.'' (Art. III, sec. 29.)

It is our duty to follow the plain terms of constitutional provisions. Hitherto this court has upheld the provisions of section 6 of Article XIII in the spirit in which it was enacted, and to that course we shall adhere. ''The constitutional limitation in question is clear and unambiguous, and means just what it says, to wit, that no indebtedness may be contracted in any manner or amount, for any purpose, in excess of the prescribed limit. (*State ex rel. Helena Water Works Co.* v. *City of Helena,* 24 Mont. 521, 63 Pac. 99, 81 Am. St. Rep. 453, 55 L. R. A. 336).'' (*Butler* v. *Andrus,* 35 Mont. 575, 90 Pac. 785, 786; *Lepley* v. *City of Fort Benton,* 51 Mont. 551, 154 Pac. 710.)

Illinois has a provision similar to ours which, as this court pointed out in *State ex rel. Helena Water Works Co.* v. *City*

*of Helena,* supra, was construed by the supreme court of the United States in *Litchfield* v. *Ballou,* 114 U. S. 190, 5 Sup. Ct. 820, 821, 29 L. Ed. 132, before our Constitution was adopted. Respecting it the highest court in the land said: "The language of the Constitution is that no city, etc., 'shall be allowed to become *indebted in any manner or for any purpose* to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of its taxable property.' It shall not *become indebted.* Shall not incur any pecuniary liability. It shall not do this in *any manner;* neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any *purpose;* no matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner, or for any purpose whatever."

The object of the provision, said the supreme court of Illinois, is "to protect the property of citizens from being burdened beyond 5 per cent. of its value, as ascertained by the assessment for state and county taxes, with any indebtedness extending into the future, and any plan or scheme which has the effect of creating such a burden is prohibited by the Constitution." (*People ex rel. Scoon* v. *Chicago & Alton R. Co.,* 253 Ill. 191, 97 N. E. 310, 311; and see *Brown* v. *Guy-Padgett Hardware Co.,* 188 Ala. 423, 66 So. 161.)

As has been seen from the allegations of the defendants' answer, it is sought to show that the warrants which were issued in excess of the constitutional limit are valid because they were issued for current expenses and in anticipation of valid tax levies already made, and therefore do not constitute an "indebtedness" within the contemplation of the constitutional provision. Counsel for the defendants in their argument present the situation fairly and concede that it is difficult to reconcile their position with prior decisions of this court. The difficulty with which they are confronted is indeed great, for the reason that the decisions upon the vital issue

538

here are *stare decisis.* In *State ex rel. Helena Water Works Co.* v. *City of Helena,* supra, wherein the same argument was advanced, and in which the same constitutional provision was under consideration, it was held, contrary to defendants' position, in language which is controlling here: "We can conceive of no possible ground for the supposed distinction between an indebtedness for current expenses, payable out of the current revenues, and one for the payment of which no provision has been made, and for which the city is generally liable"—citing many cases. (And see *Helena Water Works Co.* v. *City of Helena,* 27 Mont. 205, 70 Pac. 513.)

Likewise the argument that the school district has "assets" ▆ in the form of delinquent taxes has been denied. Uncollected delinquent taxes cannot be regarded as cash on hand or the equivalent thereof. In *Jordan* v. *Andrus,* 27 Mont. 22, 69 Pac. 118, it was declared that indebtedness means what the district owes, irrespective of the demands it may hold against others.

The fact is the warrants represent an indebtedness of the district; that the district may some day receive the amounts due on delinquent taxes does not alter the situation. To say that the district does not owe the debt because it has assets upon which it may some day realize "confuses indebtedness of the district, as used in the Constitution, with the question of insolvency of the district. The Constitution does not deal with the question of solvency, but with indebtedness." (*Riesen* v. *School District,* 192 Wis. 283, 212 N. W. 783, 786.)

The defendants rely, but without substantial support, upon ▆ *State ex rel. Rankin* v. *State Board of Examiners,* 59 Mont. 557, 197 Pac. 988, *State ex rel. Toomey* v. *State Board of Examiners,* 74 Mont. 1, 238 Pac. 316, and *State ex rel. Tipton* v. *Erickson,* 93 Mont. 466, 19 Pac. (2d) 227. It is true that there is language in *State ex rel. Rankin* v. *State Board of Examiners,* supra, which upon a casual reading might seem to lend support to the defendants' position. But in weighing and applying the language of an opinion one must keep in mind the subject under consideration and the point decided in

the opinion. (*Sun River S. & L. Co.* v. *Montana T. & S. Bank,* 81 Mont. 222, 262 Pac. 1039.) A statement accurate and applicable to the conditions considered in the case in which the opinion was written may be inaccurate and consequently inapplicable in a case where other and different conditions were presented. In the *Rankin Case* the sole question was whether the issuance and sale of treasury notes in anticipation of the payment of taxes levied, to procure funds with which to pay outstanding valid claims against, and current expenses of, the state, created a "debt or liability" within the meaning of section 2 of Article XIII of the Constitution, which reads: "The legislative assembly shall not in any manner create any debt except by law which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged; such law shall specify the purpose to which the funds so raised shall be applied and provide for the levy of a tax sufficient to pay the interest on, and extinguish the principal of, such debt within the time limited by such law for the payment thereof; but no debt or liability shall be created which shall singly, or in the aggregate with any existing debt or liability, exceed the sum of one hundred thousand dollars ($100,000) except in case of war, to repel invasion or suppress insurrection, unless the law authorizing the same shall have been submitted to the people at a general election and shall have received a majority of the votes cast for and against it at such election." An analysis of the opinion discloses, and this is made plain by the excerpts quoted from the opinions of other courts, that the decision is based upon the supposition that the existing claims against the state were incurred pursuant to valid appropriations made by the legislative assembly, and therefore were valid, and that the treasury notes proposed to be sold merely effected a change in the form of the indebtedness. In the opinion it is iterated and reiterated that the claims were not a debt or liability within the meaning of the provision under consideration, section 2 of Article XIII. Some of the quotations from the authorities cited contain matter which was unnecessary to the decision of the case then under

consideration, and to that extent are *obiter*. The application of quotations from opinions and text-books, frequently inserted by way of argument, should be viewed in the light of the question before the court for decision. It has been observed, and ▮ aptly, that the word "debt"—and that, of course, is appropriate to the words "indebted" and "indebtedness"—has no fixed legal signification, as has the word "contract," but is used in different statutes and Constitutions in senses varying from a very restricted to a very general one. Its meaning, therefore, in any particular statute or Constitution, is to be determined by construction, and decisions upon one statute or Constitution often tend to confuse rather than aid in ascertaining its signification in another. (*McNeal* v. *City of Waco*, 89 Tex. 83, 33 S. W. 322.)

This court has set at rest the meaning and application of the word "indebtedness," as employed in section 6 of Article XIII, in *Jordan* v. *Andrus*, supra; *State ex rel. Helena Water Works Co.* v. *City of Helena*, supra; *Helena Water Works Co.* v. *City of Helena*, 27 Mont. 205, 70 Pac. 513; *Helena Water Works Co.* v. *City of Helena*, 31 Mont. 243, 78 Pac. 220; and see *Palmer* v. *City of Helena*, 40 Mont. 498, 107 Pac. 512.

The power of the legislative assembly to make appropriations ▮ is limited only by the reasonably anticipated income of the state from all sources subject to appropriation (*State ex rel. Toomey* v. *State Board of Examiners*, supra; *State ex rel. Bennett* v. *State Board of Examiners*, 40 Mont. 59, 104 Pac. 1055), and the provisions of section 12 of Article XII of the Constitution, which provides: "No appropriation shall be made nor any expenditures authorized by the legislative assembly whereby the expenditures of the state during any fiscal year shall exceed the total tax then provided for by law, and applicable to such appropriation or expenditure, unless the legislative assembly making such appropriation shall provide for levying a sufficient tax, not exceeding the rate allowed in section nine (9) of this article, to pay such appropriations or expenditures within such fiscal year. This provision shall not apply to appropriations or expenditures to suppress insurrec-

tion, defend the state, or assist in defending the United States in time of war. No appropriation of public moneys shall be made for a longer term than two years." Under this provision "the legislative assembly may appropriate money from the general fund for legitimate purposes until the limit therein fixed is reached." (*State ex rel. Toomey* v. *State Board of Examiners,* supra.)

Warrants issued pursuant to lawful appropriations within the limitations above described are valid and do not create an "indebtedness" within the purview of section 2 of Article XIII. (*State ex rel. Rankin* v. *State Board of Examiners,* supra; *State ex rel. Toomey* v. *State Board of Examiners,* supra.)

When the provisions of section 12 of Article XII and section 2 of Article XIII are compared, it must be apparent that the "indebtedness" referred to in the latter section is not within the contemplation of the former; clearly the latter section has no reference to the ordinary running expenses of the state and its institutions which must be paid through legislative action exercised within the limitations prescribed. Moreover, section 12 of Article XII carries its own inhibition, and the legislative assembly must heed its mandate. It may not wilfully transgress the provisions of the supreme law. If it does, its act is a nullity. Otherwise, the positive requirements of the Constitution would be subordinate to legislative control. "It is absurd to say that a provision of the Constitution, expressly designed to restrain and confine legislation within certain definite limits, is nevertheless subject to the unrestrained legislative will." (*In re Appropriations,* 13 Colo. 316, 22 Pac. 464, 467.)

As was pointed out in the *Helena Water Works Case* (24 Mont. 521, 532, 63 Pac. 99, 103, 81 Am. St. Rep. 453, 55 L. R. A. 336), section 12 of Article XII and section 2 of Article XIII have no application to cities, towns and school districts, which are governed specifically by section 6 of Article XIII. The court said: "Why cities, etc., were not included within the terms of section 2, Article XIII, and section 12,

Article XII, we need not pause to inquire, since we find as to them an express provision, the meaning of which is now before us for determination. Nothing is said in the Constitution as to the manner in which a city shall meet its current expenses. The inhibition is against a city becoming indebted in any manner or for any purpose to an amount exceeding a certain per cent. of its taxable property.'' None of the cases construing this section was mentioned in either the Rankin, Toomey or Tipton opinions, the obvious reason being that neither was applicable to the questions presented in those cases.

No better example of the existence of an indebtedness prohibited by the Constitution can be found than that which is illustrated in the present case. The school district without the issuance of the proposed bonds is indebted to the full extent of 3 per centum of the value of the taxable property therein as ascertained by the method provided by law. If in addition thereto bonds are issued and sold to the amount of $8,602.74, the district will be indebted to that extent in excess of 3 per centum of the value of the taxable property therein. This is irrefutable.

"It is the duty of the courts to declare the law as it is, and not to exercise their ingenuity in trying to devise means by which its clear and explicit injunctions may be evaded," as Mr. Chief Justice Brantly said in *Helena Water Works Co.* v. *City of Helena*, 27 Mont. 205, 211, 70 Pac. 513, 515.

It was the policy of the state until 1901, as it had been that of the territory since 1871, to prohibit school trustees from drawing a warrant "unless there is money in the treasury to the credit of such district." (Codified Statutes, 1871-72, 621; Compiled Statutes 1887, p. 1177, Div. 5, sec. 1869; Political Code 1895, sec. 1737.) The seventh legislative assembly added: "Provided, that school trustees shall have the authority to issue warrants in anticipation of school moneys which have been levied but not collected, for the payment of current expenses of schools, but such warrants shall not be drawn in any amount in excess of the sum already levied."

(Laws 1901, p. 121.) As thus amended, section 1737 of the Political Code became successively section 830, Revised Codes of 1907, and section 964, Revised Codes of 1921. In 1925 an additional proviso, not material here, was added to section 964. (Laws 1925, p. 108, chap. 82.) Section 1012, Revised Codes 1921, is complementary to section 964 to the extent that it permits school trustees to issue warrants in anticipation of school moneys which have been levied but not collected, for the payment of current expenses of schools, not in excess of the sum levied.

It is obvious that the plight of the district is the result of the permission given school trustees to issue warrants in anticipation of tax collections. In extending the privilege the legistive assembly might have foreseen that there might be a shortage of funds because of tax delinquencies, which would result in a failure to pay the warrants from current funds, but it was unnecessary for it to command that which the Constitution commanded, that no warrants be issued beyond the limitations of the Constitution. (See *Helena Water Works Co.* v. *City of Helena,* 27 Mont. 205, 70 Pac. 513; *Palmer* v. *City of Helena,* supra.)

School trustees can only exercise such powers as the law confers upon them; they are bound to know that they cannot go beyond its limitations. When the district reached the limit of indebtedness permitted by the Constitution, the trustees were bound to know that they had no right to issue a warrant constituting a general indebtedness of the district. The limitation being applicable to all debts, irrespective of their form, in determining the amount of school district indebtedness at any time, outstanding warrants are to be taken into account, and any warrant which increases the indebtedness over and beyond the limit fixed is in violation of the constitutional provision. (*People ex rel. Seeley* v. *May,* 9 Colo. 80, 10 Pac. 641, 651.)

It is noteworthy that, in permitting school trustees to issue warrants in anticipation of taxes duly levied, the legislative

assembly did not intend to place school districts upon a pay-as-you-go plan. Although after the decisions in *State ex rel. Helena Water Works Co.* v. *City of Helena,* supra, and *Helena Water Works Co.* v. *City of Helena,* 27 Mont. 205, 70 Pac. 513, the law-making body by Chapter 30, Session Laws of 1903, amended sections 4811 and 4812 of the Political Code of 1895 (now secs. 5078 and 5079, Revised Codes of 1921), permitting cities and towns to go upon that basis, it did not extend that privilege to school districts.

When the legislative assembly convened in 1933 it was found that, by reason of the inability of property owners to pay their taxes, many school districts had issued warrants in anticipation of collections which were not made, and there existed unpaid warrants the validity of which was questioned Viewing this situation, the legislature enacted Chapter 160 of the Session Laws of 1933, embracing among other sections a validating statute which reads as follows: "All warrants issued by any school district, whether issued in excess of taxes levied, or otherwise, and outstanding and unpaid at the close of the school year ending June 30, 1933, are hereby validated and declared to be lawful, valid and subsisting warrants of the school district; provided that the total amount of such outstanding warrants together with the total amount of all bonds issued by such school district and outstanding and unpaid on June 30, 1933, shall not exceed the limit of indebtedness of school districts as prescribed in section 6 of Article XIII of the Constitution of the State of Montana." (Sec. 2, Chap. 160, Laws of 1933.) The Act also authorizes the issuance of funding bonds.

It is apparent that in enacting this section it was intended to comply strictly with the plain terms of the Constitution; the legislative assembly withheld from the trustees the power to issue bonds to refund warrants which were issued beyond the limit of constitutional indebtedness. The proposed bonds look into the future. They are to be payable on the amortization plan in ten years, redeemable in five years, from the date

of issue, and are to bear interest at the rate of not to exceed 6 per cent. per annum, payable semi-annually.

From what has been said it is clear that the theory put forth to authorize the issuance of the bonds because the warrants, having been issued for current expenses in anticipation of the collection of taxes, do not constitute an indebtedness of the district, is no less than a vain attempt to meander about a plain constitutional protection of the taxpayer. The issuance of bonds by a school district is through legislative authority only; by the very terms of the Act under which it is sought to issue the bonds, authority to issue them is withheld.

It is not for us to suggest how school districts may escape the consequences of excess expenditures or misfortune. We are to declare the law as we find it. (*Helena Water Works Co.* v. *City of Helena,* supra.) It may be that hardship will result, but, if it does, as the supreme court of Illinois said in *Law* v. *People,* 87 Ill. 385, "that by no means warrants the violation of a plain and emphatic provision of the Constitution. The liberty of the citizen, and his security in all his rights, in a large degree depend upon a rigid adherence to the provisions of the Constitution and the laws, and their faithful performance. If courts, to avoid hardships, may disregard and refuse to enforce their provisions, then the security of the citizen is imperiled. Then the will, it may be the unbridled will, of the judge, would usurp the place of the Constitution and the laws, and the violation of one provision is liable to speedily become a precedent for another, perhaps more flagrant, until all constitutional and legal barriers are destroyed, and none are secure in their rights." (Quoted by the supreme court of the United States in *Lake County* v. *Rollins,* 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060.)

If legislative assemblies or courts are permitted, under color of construction or other specious ground, to depart from that which is plainly declared as the supreme will of the people in their written Constitution, "the people may well despair of ever being able to set any boundary to the powers of the gov-

ernment. Written constitutions will be worse than useless."
(*People ex rel. Seeley* v. *May,* supra.)

Let the writ issue.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON, concur.

MR. JUSTICE ANGSTMAN, Dissenting: I am in accord with what is said in the majority opinion as to the purpose of the constitutional provisions limiting the amount of indebtedness of school districts and other subdivisions of the state. I am unable to agree, however, with the conclusion there stated that the defendant school district has exceeded its limit of indebtedness within the meaning of section 6, Article XIII of our Constitution. It should be kept in mind, too, that this section of the Constitution does not deal with expenditures, but with indebtedness. If the present indebtedness of the defendant school district is valid, the contemplated bond issue would be also, because it is simply contemplating a change in the form of an existing indebtedness. This much must be conceded.

In effect, the majority opinion holds that outstanding warrants of the school district are invalid because issued when the district had already reached its limit of indebtedness. In my opinion the majority are in error in their method of computing the indebtedness of the school district. Taxes levied and in the process of collection are to be treated as cash on hand and to be deducted from the gross indebtedness in determining whether the district has exceeded its constitutional limit of indebtedness. The more recent cases sustain this view. The rule is stated in 44 C. J. 1124 as follows: "According to a few decisions, some of which are weakened or overturned as authorities by subsequent decisions or statutes in the same jurisdiction, a limitation of municipal indebtedness refers to outstanding debts and not net indebtedness, but it is generally held that in computing the existing indebtedness of a municipality, a deduction may be made from gross indebtedness of municipal assets applicable to the payment of such indebted-

ness; and in some jurisdictions it is so provided by statutes which are held to be constitutional. Particular assets which may be deducted include cash on hand and solvent debts due the municipality.''

Delinquent taxes should be considered as in the process of collection and are deductible. In *Seymour* v. *Ellensburg*, 81 Wash. 365, 142 Pac. 875, 876, the supreme court of Washington, in speaking of this question, said: ''In determining whether the indebtedness exceeds the limit fixed by the Constitution, this court has held that, not only current taxes, but also delinquent taxes, and the interest thereon, may be treated as cash assets. In other words, that there shall be deducted from the total indebtedness the amount of current and delinquent taxes, together with interest. (*State ex rel. Barton* v. *Hopkins*, 14 Wash. 59, 44 Pac. 134, 550; *Graham* v. *Spokane*, 19 Wash. 447, 53 Pac. 714; *State ex rel. American Freehold-Land M. Co.* v. *Mutty*, 39 Wash. 624, 82 Pac. 118.) The reason given for this rule is that, in legal contemplation, the collection of the taxes and interest is certain, and therefore they are the equivalent of cash.''

The supreme court of Iowa, in *Council Bluffs* v. *Stewart*, 51 Iowa, 385, 1 N. W. 628', took the opposite view and went so far as to hold that, when a warrant is issued without cash on hand to pay it, a debt is incurred. That court has receded from this position as to a school district in the case of *Holst* v. *Consolidated etc. District*, 203 Iowa, 288, 211 N. W. 398, 402. It there held that ''unquestionably the taxes which had been levied and which were due and collectible were assets belonging to° the corporation proper, to be computed with the other assets of the corporation as though they were cash in the treasury, subject to proper offsets.'' The court in that case also permitted as a deduction from the gross indebtedness the value of school buildings and school sites available for sale.

In 56 C. J. 538 it is said: ''In computing the existing indebtedness of a school organization, there is generally deducted all of the property or assets, both real and personal, including funds in the treasury available for the payment of its liabili-

ties. This includes taxes levied which are due and collectible, in the absence of a showing that there were current expenses which would consume such taxes, money due the school district from another school district upon an adjustment of the assets and liabilities between them, but not the right of a new school board to levy a tax."

Taxes assessed and in the process of collection are constructively in the treasury. (*McCavick* v. *Florence Ind. School District*, 25 S. D. 449, 127 N. W. 476, 33 L. R. A. (n. s.) 606.) As this court said in *State ex rel. Rankin* v. *State Board of Examiners*, 59 Mont. 557, 197 Pac. 988, 991: "The taxes levied and in process of collection are treated as in the state treasury, though not yet actually paid over to the state treasurer."

It cannot be said that delinquent taxes are not in the process of collection. Under our system of collecting taxes, if not paid when due, the property is sold for the delinquent taxes. If no one appears to bid on the property, it is struck off to the county. After the county obtains deed it must sell the property, in which event the school district obtains its share of the proceeds of the sale. These various steps are but proceedings in the process of collecting the delinquent tax. (*State ex rel. Souders* v. *District Court*, 92 Mont. 272, 12 Pac. (2d) 852.)

The majority opinion seems to proceed upon the theory that the minute school district taxes become delinquent they are no longer an asset of the district. The legislature is not permitted to remit or release delinquent taxes or any part thereof. (Sec. 39, Art. V, Const.; *Sanderson* v. *Bateman*, 78 Mont. 235, 253 Pac. 1100; *State ex rel. Kain* v. *Fischl*, 94 Mont. 92, 20 Pac. (2d) 1057.)

In the absence of proof to the contrary, as here, it must be assumed that the delinquent taxes will ultimately be collected, and that a tax, being a prior lien upon property, is a solvent debt. This being so, it is my opinion that, in calculating the indebtedness of the school district, such taxes must be deducted. Reason and authority support this conclusion.

If the warrants in question here are in excess of the constitutional limit of indebtedness, they are absolutely void. If

they are void to-day, they will be to-morrow. They cannot be void at one time and valid at another. It follows that, if the majority opinion is correct, these warrants are absolutely void. If to-morrow the school district receives $8,000 in delinquent taxes, levied to meet the obligations for which the warrants were issued, it could not lawfully pay the warrants. Such a conclusion, necessarily following from the majority opinion, seems to me preposterous.

It is true that the case of *Jordan* v. *Andrus*, 27 Mont. 22, 69 Pac. 118, announced the view that "indebtedness" means what the city owes irrespective of the demands it may hold against others. But the force of that decision has been cut down by the opinion in *State ex rel. Rankin* v. *State Board of Examiners*, supra, where this court said: "In our opinion, the debt or liability intended to be prohibited by section 2 of Article XIII of our Constitution is such as is in excess of revenues available or provided for for the appropriation years— that is, for the two years intervening between sessions of the legislative assembly—and not current obligations of the state arising during such period of time for which revenues are actually available or provided. The constitutional limitation has reference to such a liability as singly or in the aggregate will obligate the state to an amount in excess of $100,000 over and above cash on hand and revenues having a potential existence by virtue of existing revenue laws. In the case before us, the funds must be considered *in esse* for the payment of the treasury notes, provision having been made for their levy and collection. The state, in conducting its business by such methods, is in no different position than the merchant doing business on an assured credit basis in anticipation of accounts due being paid to him at stated intervals. Revenue for which provision is already made may constructively be considered as cash on hand. (25 R. C. L. sec. 30.) Clearly the character of debts prohibited by the Constitution in excess of $100,000 without the majority approval of the people at a general election are such as pass the limit of available cash on hand and revenue for which adequate provision has been made by law for

the two-year period intervening between regular sessions of the legislative assembly.'' To the same effect are *State ex rel. Toomey* v. *State Board of Examiners*, 74 Mont. 1, 238 Pac. 316, and *State ex rel. Tipton* v. *Erickson*, 93 Mont. 466, 19 Pac. (2d) 227.

True, the *Rankin Case*, supra, had relation to a state indebtedness, but no amount of rationalization can justify a different meaning of the word ''debt,'' as applied to the state from that applied to a school district. The attempt to draw a distinction between the two because of section 12, Article XII, Constitution, cannot, in my opinion, be sustained. Section 12 is not a grant of power. It confers no rights upon the state. It is simply an additional limitation upon the power of the state legislature. No such constitutional limitation has been made as to a school district. This came by way of legislative enactment. (Secs. 964 and 1012, Rev. Codes 1921.)

It is my view that defendant school district is not indebted beyond its constitutional limit, and that the writ prayed for should be denied.

Rehearing denied December 27, 1933, MR. JUSTICE ANGSTMAN dissenting.