CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAIL-
ROAD CO., Respondent, v. FALLON COUNTY, Appel-
LANT.

(No. 7,163.)

(Submitted November 1, 1933.   Decided December 22, 1933.)

[28 Pac. (2d) 462.]

Cause submitted on briefs of Counsel.

*Mr. D. R. Young,* for Appellant.

570

*Messrs. Murphy & Whitlock,* for Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought to recover taxes paid under protest. The tax involved is a special school tax levy of six mills authorized by the vote of the qualified electors of school district No. 12 of Fallon county at an election held on July 20, 1931. The attack made upon the tax is that it was and is void and illegal because in violation of section 7, Chapter 146, Laws 1931, in that the election was held on July 20, whereas section 7 of

the Act, in providing for the election, contains the provision, "And such election must be held before the 1st day of July." The complaint alleges sufficient facts to present the question of the validity of the election and the tax levied pursuant thereto.

The answer of defendant denies that either the election or the tax is void or illegal, and by way of affirmative defense alleges that during the month of June, 1931, the board of trustees of the school district prepared and adopted a preliminary budget for the ensuing school year pursuant to Chapter 146, supra; that it determined that the amount which would be received from the ten-mill levy and all other sources would be inadequate to meet the expenses provided for, and determined that an additional six-mill levy was required; that an election was called and held on July 1, which resulted in the defeat of the proposal for a six-mill additional levy by a vote of 57 to 51; that prior to July 1 all the teachers, principals and janitors had been employed for the district for the ensuing year; that under section 13 of Chapter 146 no change could be made in any item of the preliminary budget which would reduce or affect the salaries or wages of the teachers, principals or janitors; that the combined salaries of those thus employed, without considering other necessary expense of conducting school, exceeded the amount which would be received from the district ten-mill levy and from all other sources during the school year; that unless a special levy be made all items in the budget, save those for salaries of teachers, principals and janitors, would have to be stricken therefrom and no money expended therefor, and that it was essential and for the best interests of the district that a special levy be made; that the board of trustees called an election on July 20, 1931, for the purpose of resubmitting to the qualified electors the question of whether an additional six-mill levy should be made; that the election was regularly held after due notice, and none but authorized and legal voters were permitted to vote, and that the proposition then carried by a vote of 69 to 30. It is alleged that the budget law, so far as it provides for the time of holding the election is directory and not mandatory,

and that the election, and the levy made pursuant thereto, are valid.

Plaintiff demurred generally to the answer as a whole and to the affirmative defense. The demurrer was sustained. Defendant declined to plead further, and judgment was entered in favor of plaintiff. Defendant has appealed from the judgment.

The only question presented by the appeal is whether the language in section 7, Chapter 146, supra, to the effect that "such election must be held before the 1st day of July," is mandatory or merely directory. If it is mandatory, then the judgment must be sustained. If it is directory merely, the judgment cannot stand.

In considering whether the quoted language is mandatory or directory, we point out that the attack here made comes after the election, and not before. That this is an important fact is shown by the rule adopted by this court, from the case of *Jones* v. *State ex rel. Wilson*, 153 Ind. 440, 55 N. E. 229, 233, in the case of *Goodell* v. *Judith Basin County*, 70 Mont. 222, 224 Pac. 1110, and reaffirmed in *Weber* v. *City of Helena*, 89 Mont. 109, 297 Pac. 455, as follows: "All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void."

While there is no absolute test by which to distinguish mandatory from director provisions of a statute, language, however mandatory in form, may be deemed directory whenever "the legislative intent does not require a mandatory construction." (59 C. J. 1073.) "Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere mat-

ter of form. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and the same is true where no substantial rights depend on the statute, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results." (59 C. J. 1074.)

In 9 R. C. L. 998, after stating that a statute fixing the time of an election is ordinarily regarded as mandatory, appears this statement: "However, this rule is not inflexible and a statutory provision as to the time for holding an election will be treated as directory where it appears from its general scope and policy that such is the legislative intent. Moreover, where an election clearly expresses the will of the voters, the courts are disinclined to set it aside because of a departure from a statutory provision as to the time of holding it even if this be regarded as mandatory; and so if it does not appear that the holding of an election on a day different from the day fixed by law was induced by any corrupt or fraudulent motives, that it was the result purely of a mistake and no one was prevented from voting thereby, the court may in the exercise of its discretion refuse to consider an attack upon its validity. * * * And so where the authorized officials have failed to call an election upon the date provided for in an Act of legislature, and there is no particular reason except that it would conduce to orderly procedure why the election for the purpose specified should not be held on one day as well as another, the fixing of the time may be considered as directory and not mandatory. Similarly, a statute requiring an election to be held within a prescribed time, for example after the presentation of a petition, should be considered as intended to insure the timely exercise of the authority to call the election, and not as a mandatory provision."

On the authority of the foregoing principles the Court of Appeals of Kentucky, in *Davidson* v. *Board of Education of City of Pikeville*, 225 Ky. 165, 7 S. W. (2d) 1056, held that under a statute making it the duty of the city council to call an election "not less than fifteen nor more than thirty days" from the time a certificate is filed with it, an election called on the thirty-third day after the filing of the certificate was a substantial compliance with the statute, and that the election was valid.

"The purpose of a school tax election being to get a full, free and fair expression of the voters, and such elections being unattended with the formality of other elections, the statutes providing for such elections should be interpreted with liberality, in view of the great public purposes which they accomplish, and mere irregularities or informalities in an election, which do not affect the fairness of the election or the result, should be overlooked and disregarded, and should not be held to render invalid a levy otherwise valid." (56 C. J. 667. Compare, also, *Hudgins* v. *Mooresville Consol. School District*, 312 Mo. 1, 278 S. W. 769.)

"Notwithstanding the time for holding the election is fixed by the statute, an election held on another day, of which ample notice was given, and at which ample opportunity was offered all the voters to vote, is not void where no provision is contained in the statute to such effect." (56 C. J. 661.)

In the case of *Board of Excise* v. *Board of Directors of School District No. 27*, 31 Okl. 553, 122 Pac. 520, 30 Ann. Cas. 1913E, 369, the court had before it a statute providing that elections upon special levies for school purposes shall be held on "the second Tuesday after the first Monday in August." The excise board refused to call an election because the time had passed within which it might do so under the statute before the board of equalization made its return from which it could be determined that an election was necessary. The proceeding was by mandamus to compel the calling of the election long after the statutory time had passed. While the writ was denied because of the delay which would result in levying the

tax, the court said: "As we view the question, after an exhaustive review of the authorities, the particular date, as fixed in the statute, is not of the essence of this law, and there is no reason why the same should be held to be mandatory, and not directory. The general rule applicable for the determination of this question is set forth in the case of *State ex rel. Cothren* v. *Lean*, 9 Wis. 279, 292, wherein the court says: 'Where there is no substantial reason why the thing to be done might not as well be done after the time prescribed as before—no presumption that by allowing it to be so done it may work an injury or wrong—nothing in the Act itself, or in other acts relating to the same subject-matter indicating that the legislature did not intend that it should rather be done after the time prescribed than not to be done at all, there the courts assume that the intent was that, if not done within the time prescribed, it might be done afterwards.' In our judgment, there is no substantial reason to hold that, if the election were not called at the time fixed by the statute, the legislature intended that it should not be called at all, especially so long as an opportunity to call the same might occur in time, so that the tax might be extended and collected without disorganizing the system. There is no particular reason, except that it would probably conduce to orderly procedure, why the election for this particular purpose might not be called on one day as well as another. It is, as denominated in the statute, a special election, and under the conditions as shown was one that might or might not occur in any year, owing to the condition of the assessment and levy made by the particular municipality and the judgment and discretion of the excise board. Numerous authorities hold that statutes similar to this are directory in their operation, and have allowed mandamus to require the calling of elections after the time fixed by statute had passed, on the theory that the law was directory, not mandatory, and that the holding of the election, and not its date, was of the substance and paramount in its importance." To the same general effect is *Missouri Pac. R. Co.* v. *McIntosh*, 92 Okl. 153, 218 Pac. 693. (And compare *State* v. *Smith*, 22 Minn. 223;

*State* v. *Young,* 6 S. D. 406, 61 N. W. 165; *Rex* v. *Latherby,* 17 Ont. L. Rep. 304, 12 Ont. W. Rep. 664.)

The only purpose in providing that the election must be held before July 1 was to have the question determined in time to prepare the budget and make the levy. Under the Budget Act the board of school budget supervisors does not meet to consider the budgets of the various school districts until the fourth Monday in July, which, in 1931, was on July 27, or one week later than the election. Thus it will be seen that the lateness of the election in no way interfered with the operations of that board in making revisions in the budget, nor did it interfere with the officers in making the tax levy at the proper time.

It is true that section 8 of the Budget Act requires the county superintendent of schools to publish a notice between the tenth and twentieth days of July, stating that the preliminary budgets are on file and open to inspection, and that the budget supervisors will meet at the office of the county superintendent on the fourth Monday in July for the purpose of considering the final budget. It is contended that, where, as here, the election is not held until July 20, the taxpayer has not sufficient information from the preliminary budget on file as early as July 10 to determine whether to support or oppose the proposed budgets. It should be noted that this plaintiff makes no claim that it was not afforded full opportunity to present its views of the budget to the budget supervisors. So far as the record discloses, no other taxpayer is making any complaint. There is no room in this case for an argument on behalf of taxpayers without notice of the election. There were only nine votes less at the election of July 20 than at the election of July 1. No suggestion is here made that any taxpayer has been prejudiced by want of notice of the election. Also, the preliminary budget which is on file on July 10 simply contains a list of proposed expenditures, together with the county superintendent's estimate of revenues for the school year from (1) state apportionment, (2) county apportionment, six to eight mill levy general school fund, (3) common school

equalization fund, (4) all other sources except tax levies, and (5) ten-mill special district levy. (Section 4.) It makes no reference to a special tax levy other than the ten-mill levy, and the taxpayer would acquire no information with relation to a special tax levy by its examination in any case. So far as the preliminary and final budget is concerned, the taxpayer's interest is in watching the expenditures rather than concerning himself with the source of income other than those above specified. If the proposed expenditures exceed the anticipated income from the five sources above, the taxpayer must know that, in order to make the expenditures contemplated, a special levy must follow, and hence he is not misled so far as his right to attack the budget is concerned, by delay in holding the election for the special levy.

Moreover, the record here abounds with evidence that the taxpayers in this case were not in anywise deceived or misled as to information contained in the preliminary budget on file. That budget must have shown that the expenditures exceeded anticipated revenues from sources other than a special levy, for an election had already been called for July 1 to authorize a special levy. Between July 1 and the time of filing the preliminary budget on July 10 no one is authorized to make any changes therein, and hence it must have shown on July 10 exactly what it revealed on July 1, when the first election was held.

The Act in question bears evidence that the intention of the legislature was not to limit the power to hold an election at a later date than that specified, but to insure its timely exercise. (*State* v. *Town Council of South Kingstown,* 18 R. I. 258, 27 Atl. 599, 22 L. R. A. 65; *Robinson* v. *McCown,* 104 S. C. 285, 88 S. E. 807.)

This court has had occasion to hold that certain statutes, mandatory in form, are directory merely. Thus in *Custer County* v. *Yellowstone County,* 6 Mont. 39, 9 Pac. 586, 587, involving the adjustment of indebtedness between an old and a newly created county, the statute provided that the county commissioners of the two counties involved "shall meet at the

court-house in the town of Miles on the first Monday of March, A. D. 1883, to adjust the indebtedness between said counties." Having failed to meet at the time specified, the action was instituted. It was there urged that the statute was mandatory, but the court said: "This provision was not mandatory. By the failure to meet, the rights of the parties interested were not prejudiced. Those directions which are not of the essence of the thing to be done, but which are given mainly with a view to the orderly and prompt conduct of the business, and by a failure to do which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the Act is performed, but not in the time or in the precise mode indicated, it may still be sufficient if that which is done accomplishes the substantial purpose of the statute." (Compare, also, *State ex rel. Helena Adjustment Co.* v. *District Court*, 92 Mont. 587, 19 Pac. (2d) 226.)

We hold that the Act, so far as it fixes the time for the election, is directory, merely. It follows that the court erred in sustaining the demurrer to the answer.

The judgment is reversed and the cause remanded, with directions to set aside the order sustaining the demurrer and to enter an order overruling it.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. CHIEF JUSTICE CALLAWAY, Dissenting: For many years the rising cost of public activities, constantly increasing the burden upon the taxpayer, has been the subject of serious civic concern. In order to compel governing bodies to proceed with caution in the expenditure of public funds, Budget Acts have been enacted by the legislatures of many states with the idea of preventing extravagance and compelling the exercise of economy, without the loss of efficiency, in governmental functions. In 1919 our legislature enacted Chapter 205, a Budget Act relating to the state government (Laws 1919, p. 491), and Chapter 211, providing for the creation of a rural school district in each county. Section 5 of Chapter 211 requires the

board of trustees of each subdistrict therein before the first Thursday in July to prepare and certify to the board of trustees of the rural school district a budget which ''shall explain in detail the several items of estimated expenditures, together with an explanation of the necessity therefor'' (Laws 1919, p. 516); with amendments section 5 is now section 1044, Revised Codes 1921.

Chapter 146, Laws of 1931, the School District Budget Act, is a development of that policy; the idea is to compel a school district to live within its income. The purpose of the Act is to curb extravagance in school affairs, to reduce expenses to the necessities, and to that end to afford to the taxpayer, at frequent intervals when the budget is under consideration, information as to the financial situation of and the requirements of the district, in order that he may be in a position to appear before the board and intelligently make known his desires with respect to the maintenance of the schools, and to voice his protest against that which he may think unnecessary. In furtherance of this design the legislature has spoken in no uncertain words. It has declared emphatically when and how each step shall be taken, employing the mandatory words ''shall'' and ''must.''

Chapter 146 provides a budget system for making and controlling estimates, expenditures and tax levies by school districts, creating a board of school budget supervisors in each county, prescribing their powers and duties, and specifying the duties of school trustees, school clerks and county officers in connection therewith. Passing by sections of the Act which direct the county superintendent to furnish blanks and information to the trustees, it is provided in section 5 that during the month of May of each year, and before the thirty-first day of the month, the county superintendent must cause a notice to be published in the official newspaper of the county, stating that in each school district the board of trustees will meet in regular session on the second Monday in June at its usual place of meeting, and will at such meeting prepare and adopt a preliminary budget for the next ensuing school year, and

that any taxpayer in the district may appear at such meeting and be heard on such preliminary budget. At the regular meeting of the board of trustees on the second Monday in June, it must consider, prepare and adopt a preliminary budget for the next ensuing school year, and any taxpayer in the district may appear and be heard in regard to the preliminary budget, or any item or amount proposed to be included therein. (Sec. 6.) If, after the board of trustees has adopted the preliminary budget, it appears to the board that the amount which will be received from a ten-mill tax levy, and from other sources, for the general fund of the district, as shown by the county superintendent's estimate of revenues, will not be sufficient to meet and take care of the expenditures proposed to be made during the ensuing school year from the general fund as contained in the preliminary budget, the board must determine and make an estimate of the amount of the deficiency and the number of mills of additional levy required to be made "to meet and take care of the deficiency," and must call an election in the manner prescribed by law for the purpose of obtaining the approval of the qualified electors of the district to the making of the additional levy, "and such election must be held before the 1st day of July." (Sec. 7.)

The county superintendent, as clerk of the board of school supervisors, between the tenth and twentieth day of July of each year, must publish a notice in the official newspaper of the county stating that the preliminary budgets of all school districts in the county for the ensuing school year, as prepared by the boards of trustees of such districts, are on file in the office of the county superintendent; that the same are open to the inspection of all taxpayers, and that the board of supervisors will meet at the office of the county superintendent at 10 o'clock in the morning on the fourth Monday of July for the purpose of considering, fixing, and adopting the final budget and fixing the amount of the expenditures which may be made for each purpose by each school district, and any taxpayer in the school district may appear at such meeting and be heard before the board on any part of the budget for his

district. (Sec. 8.) Immediately after the thirtieth day of June the county superintendent must attach to the preliminary budget for each school district an estimate of receipts and statistics for apportionment. (Sec. 9.) After the county superintendent has attached such schedule to the preliminary budget for each school district, and before the tenth day of July, the county treasurer must prepare a statement for each school district, showing the amount of cash on hand at the close of the last school year, the obligations to be met during the current school year, and the details of bonds outstanding, which statement must be attached to the preliminary budget for such school district. (Sec. 10.) Before the third Monday in July the county clerk shall prepare a certificate for each school district, which the county superintendent shall attach to the preliminary budget for such district, showing the total taxable valuation of the school district, and certifying also, if such be the fact, that he has on file a certificate of election showing that an additional levy, stating the number of mills, has been authorized. (Sec. 11.) And on the fourth Monday in July, at 10 o'clock in the morning, the board of school budget supervisors of each county shall meet in the office of the county superintendent of schools, at which time the county superintendent, as clerk, shall lay before the board all the preliminary budgets adopted by the trustees in the several school districts, with the county superintendent's and county treasurer's statements and the county clerk's certificate attached thereto; whereupon the board shall proceed to examine and consider the same. The board may adjourn its meeting from day to day, but must approve and adopt the final budget for each school district and fix and determine the amount to be raised by tax levy for each school district not later than the second Monday in August, and before the fixing of tax levies for such districts. At such meeting, and at all adjournments thereof, any taxpayer in any district may appear before the budget board and be heard upon the budget for such district and on any item or amount contained therein. (Sec. 12.)

In these sections mandatory words are employed where there is a direction that an act is to be done; the word "shall" is used seven times, and the word "must" ten times.

There is nothing permissive or directory in the language used; it is mandatory, peremptory. As is said in *State ex rel. O'Connor* v. *McCarthy,* 86 Mont. 100, 282 Pac. 1045, 1048: "The legislature used the verb 'must,' which denotes 'obligation,' as 'we must obey the laws' (Webster), and, when used to impose a duty, it is mandatory and peremptory, excludes discretion, and imposes upon the officer an 'absolute duty to perform the requirements of the statute in which it is employed,' (*People* v. *Thomas,* 32 Misc. 170, 66 N. Y. Supp. 191, 193; *In re Farrell,* 36 Mont. 254, 92 Pac. 785, 787; *Ex parte Smith,* 152 Cal. 566, 93 Pac. 191; *Reinert Bros. Const. Co.* v. *Tootle,* 200 Mo. App. 284, 206 S. W. 422.)"

In his excellent brief, counsel for appellant argues that, as the attack upon the election, the basis of the special levy, was made after the election had been held, the requirement that such an election must be held before the first day of July should be construed to be directory rather than mandatory—that it does not make any difference whether the election was held before or after the first of July, provided it was before the fourth Monday of that month, and the majority of the court agrees with him. It does not seem to me the argument is sound. The records compiled in the county superintendent's office prior to July 20, and concerning which the superintendent was required to publish notice that the preliminary budget for the school district had been prepared, would not have given a taxpayer any information respecting a special tax levy, for no election for that purpose had been held; all the acts required to be done by the county superintendent by sections 8 and 9, and the certificate of the county clerk required by section 11, were completed before the special election was held. The record upon which the board of school budget supervisors must act is made up from the records compiled in the county superintendent's office *prior* to July 20, which necessarily excludes a special election held on that day. Moreover, a tax-

payer would be without official or any notice of an impending tax levy based upon an election not contemplated by law.

I do not find anything in the record to support the assertion of the majority that the taxpayers were not "deceived or misled as to information contained in the preliminary budget on file," unless it is that information as to the special election was not there. This seems to be an attempt to pump air into a sagging tire. It cannot be assumed that all of the individual taxpayers required to pay the tax resided in the district or had notice of the election. The question, in effect, is asked, What difference would it make whether or not the taxpayers had notice of the election? The answer is that the statute gives them the right to notice. (Sec. 8.) Moreover, a taxpayer might have very good reasons to appear before the board to express his wishes or lodge his objections with respect to the expenditure of money to be raised by an additional levy. This, like some of the suggestions in the majority opinion, may not be important. What is important is that the legislature assembly had the power to say, and said, what steps should be taken in order to impose upon the taxpayers an additional tax. The legislative intent is not doubtful; it is clear and explicit, expressed in words as forcible as could well be selected.

. When the legislative intent is clearly disclosed from the object to be accomplished, and the particular imperative directions of the Act are considered, we should hold that section 7 definitely limits the time within which the electorate must express its will with relation to a special levy. (*Howard* v. *Jensen*, 117 Neb. 102, 219 N. W. 811, 813.)

Over thirty years ago this court declared it to be the rule, particularly in regard to special taxes, that the various steps provided by statute to be taken in levying them must be observed. (*Hilburn* v. *St. Paul etc. Ry. Co.*, 23 Mont. 229, 58 Pac. 551, 811.) This is supported by the great weight of authority. "Acts required by a statute to make a tax chargeable are conditions precedent, and must be strictly complied with. (*Hewes* v. *Reis*, 40 Cal. 255.) 'Statutory provisions regulating the assessment and levy of taxes are mandatory

when their object is the protection of the taxpayer.' (1 Desty, Taxation, p. 515.) In tax laws, provisions for the levy of a tax are imperative. (1 Cooley, Taxation, 4th ed., sec. 124; *Jones* v. *State,* 17 Fla. 411; *People* v. *Otsego County,* 51 N. Y. 401; *City of Indianapolis* v. *McAvoy,* 86 Ind. 587)." (*Howard* v. *Jensen,* supra.) " 'The power and authority to levy and collect taxes is wholly statutory, and where the purpose for which and the circumstances under which a special tax may be levied are expressly defined and limited by statute, the prerequisite circumstances must exist in order to give legal effect to a pretended tax levy for such purpose.' (*Oregon Short Line R. Co.* v. *Minidoka County,* 31 Idaho, 719, 175 Pac. 962)." (*Smith* v. *Canyon County Consol. School Dist.,* 39 Idaho, 222, 226 Pac. 1070, 1075.)

This is not a case wherein it may be said there has been a substantial compliance with statutory requirements; the groundwork is not here. The election was not held within, but beyond, the authority of the statute. Therefore it was void. (Compare *Weber* v. *City of Helena,* 89 Mont. 109, 297 Pac. 455.)

Certainly there cannot be any doubt as to the legislative intent when the law-making body said: "Such election must be held before the 1st day of July." " 'The intention of the legislature must be inferred from the plain meaning of the words. This rule must be first resorted to before resort should be had to other rules.' (*Hedges* v. *County Commissioners,* 4 Mont. 280, 1 Pac. 748; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833)." (*Great Northern Utilities Co.* v. *Public Service Com.,* 88 Mont. 180, 293 Pac. 294, 299.)

Fifteen years ago this court said: "It is a rule which has been in force in this jurisdiction for more than 35 years, that, whenever the language of a statute is plain, simple, direct, and unambiguous, it does not require construction, but it construes itself." (*Cruse* v. *Fischl,* 55 Mont. 258, 175 Pac. 878, 880.) The rule has been affirmed repeatedly. (*State ex rel. Bevan* v. *Mountjoy,* 82 Mont. 594, 268 Pac. 558; *Chmielewska* v. *Butte*

& *Superior Min. Co.,* 81 Mont. 36, 261 Pac. 616; *State ex rel. Federal Land Bank* v. *Hays,* 86 Mont. 58, 282 Pac. 32.)

If the trustees of School District No. 12 employed by contract a greater number of teachers than the district was able to pay for, and thus absorbed all the moneys available for maintaining the school, that will not justify frittering away by construction the provisions of the Budget Act designed for the protection of the taxpayers. As the supreme court of Idaho said in *Smith* v. *Canyon County Consol. School Dist.,* supra: "The resulting situation is an unfortunate one. It is due, however, to the provisions of the statutes. This court would not be justified in refusing to give effect to the plain provisions of the statutes merely because the result is undesirable."

The majority opinion says this, in effect: True, the statute is mandatory, but, in order for the taxpayer to maintain his rights, he must rush into court and sue out an injunction; if he does that, the election will fail; but, whether he has notice of the election or not, if he waits until after the election, he is without remedy, for the statute, once mandatory, is now to be deemed directory.

The force of another statute is disregarded; it provides that in all cases of levy of taxes which are deemed unlawful by the party whose property is taxed, or from whom the tax is demanded, the party may, before the tax becomes delinquent, pay the same under written protest to the officer authorized to collect the same, and he may within sixty days thereafter bring suit against the officer collecting the tax to recover the same. (Sec. 2269, Rev. Codes 1921, as amended by Chap. 142, p. 255, Laws 1925.) The plaintiff pursued this course, but its counsel were mistaken in believing that this statute means what it says.

This suit in itself is of no special moment, but the rule established in this case will affect every taxpayer who desires to challenge the legality of a tax imposed upon his property pursuant to a special election. The effect of this decision is to declare that, in the absence of an injunction to restrain it, an

election for the imposition of a special tax may be held at any time. This is tantamount to the destruction, rather than a construction, of section 7 of the Budget Act.

"It is the duty of the courts to declare the law as it is, and not to exercise their ingenuity in trying to devise means by which its clear and explicit injunctions may be evaded." (Mr. Chief Justice Brantly in *Helena Water Works Co.* v. *City of Helena*, 27 Mont. 205, 70 Pac. 513, 515; *Farbo* v. *School District No. 1 of Toole County et al.*, ante, p. 531, 28 Pac. (2d) 455.)

The outcry against the constantly increasing taxation is heard on every side. Failure to follow the law as it is written has contributed in considerable measure to the financial headache with which the taxpaying body is now suffering. I think the judgment of the district court is right, and that it should be affirmed.

Rehearing denied January 10, 1934, MR. CHIEF JUSTICE CALLAWAY dissenting.