STATE ex Rel. JAUMOTTE, County Treasurer, Respondent, *v.* ZIMMERMAN et al., Appellants.

(No. 7, 729.)

STATE ex Rel. LOWE, Sheriff, Respondent, *v.* ZIMMERMAN et al., Appellants.

(No. 7,730.)

(Submitted November 8, 1937. Decided November 17, 1937.)

[73 Pac. (2d) 548.]

Messrs. *Marron & Foor, Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Enor K. Matson,* First Assistant Attorney General, for Appellants, submitted a brief; *Mr. Ailie M. Foor* argued the cause orally.

466

*Mr. Ernest L. Walton,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

These are appeals from two judgments of the district court of Roosevelt county commanding the board of county commissioners and the county clerk to issue warrants for the salaries of the county treasurer and sheriff, as provided by law for a county of the sixth class. The causes were tried upon an agreed statement of facts. It was stipulated that the decision in the treasurer's case should also control in the sheriff's case. The appeals were likewise consolidated for consideration here. The parties will be referred to herein as follows: The treasurer and sheriff as plaintiffs, and the board of county commissioners and county clerk as defendants.

From the pleadings it appears that plaintiffs were elected to their respective offices in 1934, each now serving his second two-year term. The treasurer's term will expire in March, 1939, and the sheriff's in January of the same year.

The agreed statement of facts shows that, during the years 1935 and 1936, Roosevelt county was a county of the sixth class, and operated as such; that the assessable property within the county was duly assessed for the year 1936 and showed the assessed value to be less than $5,000,000, which fact "had been heard" by plaintiffs; that while the decrease in valuation of the property was discussed by the board of county commissioners during the month of August, 1936, at a regular meeting thereof, no action was taken by the board to re-establish or redetermine

the classification of the county. The board took no action for the reason that it considered that the decrease in the valuation of property automatically determined the class of the county. In February, 1937, however, it made the following order in its minutes: "Upon motion, board designated Roosevelt County as a seventh class county, due to the fact that the valuation of this county has dropped below five million dollars."

The agreed statement discloses that it is the contention of the board that Roosevelt county is now, and at all times during the year 1937 has been, a county of the seventh class; that plaintiffs' salaries have been paid during all of this time without the filing by them of any claims in writing with the county clerk and recorder, and that no claims in writing have been filed by plaintiffs at any time claiming any salary; that defendants have paid, and intend to continue paying, all salaries of county officers upon the basis of a seventh class county; that they would not have paid to any such officer any greater salary regardless of whether he had demanded it or filed claim therefor, and that plaintiffs were duly advised of such determination prior to the commencement of their actions.

The only question involved is: Are plaintiff officers of Roosevelt county entitled to the salary provided by law for officers of a county of the sixth class, or a county of the seventh class?

The decision depends upon the interpretation and effect to be given sections 4741 and 4742 of the Revised Codes. The former reads in part as follows: "For the purpose of regulating the compensation and salaries of all county officers, not otherwise provided for, and for fixing the penalties of officers' bonds, the several counties of this state shall be classified according to that percentage of the true and full valuation of the property therein upon which the tax levy is made, as follows: * * * Seventh class. All counties having such a taxable valuation of less than five millions of dollars."

Section 4742 provides: "The several boards of county commissioners must, at their regular session in September, 1906, make an order designating the class to which such county belongs, as determined by the assessed valuation of such county

for the year 1906, under the provisions of this Act, and in each even numbered year thereafter; provided, that such classification shall not change the government of the county then in existence until the first Monday in January next succeeding.''

It is clear that section 4741 prescribes a standard or criterion for the classification of counties for the purpose of regulating the compensation of certain officers, as well as for fixing the penalties on their bonds. (See, also, section 4866, Rev. Codes.) Section 4742 contains a provision as to the duty of the board of county commissioners in the premises; that is, a method of declaring and promulgating the effect of the facts of the valuation which occurred by operation of law in effect long before the election of 1936.

Plaintiffs prevailed in the trial court upon the theory that the duty imposed upon the board by section 4742 was mandatory as to time, and that the order of reclassification subsequently made in February, 1937, was not a sufficient legal compliance with the statute to accomplish the reclassification. It is the theory of defendants that the statute is merely directory, and that, having failed strictly to comply therewith, they were not precluded from doing their duty at a later date with the same force and effect as if it had been done within the time prescribed by the statute.

The question thus presented is strikingly similar to that raised in the case of *Shekelton* v. *Toole County,* 97 Mont. 213, 219, 33 Pac. (2d) 531, 534, a case in which the board of county commissioners failed to adopt a resolution providing for the issuance of bonds within the statutory time. The statute there applicable required such action within thirty days after the election. In the disposition of that case, the following rule from 59 C. J., section 631, page 1074, was approved, which we think is equally as applicable here: ''Whether a statute is mandatory or directory. depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience

rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and the same is true where no substantial rights depend on the statute, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results."

This case would seem, as did the *Shekelton Case,* supra, to be one wherein the requirements of the statute "are given merely with a view to the proper, orderly and prompt conduct of business." We are unable to see where any substantial rights have been impaired by the board's delay in making the order required by section 4742. It is agreed that plaintiffs had heard of the assessment being under $5,000,000—the criterion for determining what their salaries should be—and, also, that they had been paid since January, 1937, on the basis of a seventh class county. It would seem, therefore, from these admitted facts, that the general purpose and result contemplated by the statute has been fairly and substantially accomplished.

Under the authorities cited, and because of what we have just said, we hold that this provision of the statute is directory rather than mandatory. What was said on this point in the *Shekelton Case,* supra, is likewise applicable here: "It might, however, have been mandatory in the sense that the board could have been compelled to pass and adopt the resolution within the designated thirty days. Now that the board has acted, even out of time, such provision should fairly be viewed as directory only."

The reclassification was only appropriate and legally possible when the 1936 records of the assessor's office showed an assessed valuation of the property in the county at less than $5,000,000. For the purposes of the orderly government of the county, however, section 4742 expressly forbids any such reclassification from taking effect until the first Monday of January next succeeding. This was obviously to prevent raising or lowering the salaries of most county officers having two-year terms during

474

the period thereof, and to comply with the spirit, but not necessarily with the letter, of our Constitution in that respect.

The order of the board merely gave formal expression to a status, the basis of which had already eventuated by operation of a law in effect at the time of the election in 1936. In the text, 15 C. J., section 163, pages 498, 499, the matter is stated correctly, we think, as follows: "Except where it is specifically provided that counties are not by operation of law reclassified under a new census, but remain in the old classification until reclassified by the legislature, statutes classifying counties according to population for the purpose of fixing salaries of county officers operated automatically to place a county in a certain class on the last census showing it to have the required population; but such statutes do not so operate merely on the county attaining such population, but only on the legal ascertainment of the fact by the census bureau, and they will not be allowed to operate so as to change an officer's compensation during his term in violation of constitutional provisions."

Here the classification depends upon the assessed valuation of property rather than upon the difference in the population. The principle, however, is the same, the assessed valuation of the property in the county as shown by the records in an even-numbered year being analogous to the legal ascertainment of the population at a designated time. (Compare *Faucher* v. *Rosenoff*, 65 Wash. 416, 118 Pac. 315.)

Plaintiffs also invoke a constitutional provision in support of their position. They argue that, even if the action and order of the county commissioners in February, 1937, reclassified Roosevelt county for any purpose, the same could not affect the officers elected in 1936, by reason of the provision of section 31, Article V, of the state Constitution, prohibiting the passing of a law increasing or diminishing an official's salary after his election or appointment. We are not impressed with this contention. The law which in this case operated to reduce the salaries of certain officials is one that was on the statute books before these plaintiffs took office. It is, in fact, the only law by the terms of which they may collect for services at all.

It is a general rule that public officers can only claim compensation where the compensation is provided by law. (*State ex rel. Matson* v. *O'Hern,* 104 Mont. 126, 65 Pac. (2d) 619.) When these plaintiffs were candidates for their respective offices, they were charged with the knowledge that their salaries might be the same, more, or even less than their predecessors were receiving. By virtue of the existing statute, plaintiffs took office subject to the contingency that, by operation of law, their salaries might be reduced or increased, depending entirely upon the assessed valuation of the property in the county.

This identical question was under consideration in the recent Oklahoma case of *Drolte* v. *Board of Commissioners of Ellis County,* 176 Okl. 622, 56 Pac. (2d) 800. A county clerk was there involved, and his salary was, as in this case, determinable according to the assessed valuation. In construing a similar constitutional provision the court relied upon the authority of an earlier case in which the population of the county was the determining guide as to what the salary should be. (*Board of Commissioners of Delaware County* v. *Williams,* 38 Okl. 738, 135 Pac. 420, 422.) It was there said: ''The foregoing provision of the Constitution, prohibiting a change of salary of an officer during his term of office, does not require that the salary of an officer shall be uniform throughout his term. It requires only that there shall be no difference in his salary during the different parts of his term, except such as result from the operation of a law enacted prior to his election or appointment. A statute enacted before an officer is elected might provide that his compensation should consist of the fees of his office. Under such statute it is entirely probable that the fees of the first year of a two-year term would greatly exceed those of the second year, or vice versa, yet such a difference in the salary of such respective years would not constitute a change in the salary of his office, in violation of the foregoing provision of the Constitution. So, in the instant case, the officer's salary is made to depend upon the population of his county at biennial periods, and the fact that the census at one of the periods, occurring after his term began, exceeds the population as shown by the preced-

ing census, and thereby operated to give the officer a greater compensation for the latter period of his term than for the first period, does not constitute a change of salary by operation of any law enacted during his term, but is a difference in salary, resulting from the operation of a statute enacted before his term began. The same reasoning and conclusion apply to the amount to be allowed for clerk hire.'' The same principle controls here, except that instead of the population being the effective matter which changed the salary in this instance, it was the decreased valuation of the assessed property in the county.

It is obvious that the legislature may likewise provide fixed or flat compensation for all or any part of a term, viz.: It might provide that all sheriffs shall receive $2,000 for the first year of a term, and $3,000 or $1,000 for the second year, provided always that the statute so fixing compensation be in effect at the time of the election of the incumbent. This might come about by reason of facts justifying such discrimination known to the legislature and by it deemed sufficient to warrant such discrimination.

Under this view of the matter, and by reason of what we have heretofore said with regard to the duty of the board of county commissioners, we hold that each of the plaintiffs here is entitled to compensation on the basis of a county of the seventh class. As pointed out earlier in this opinion, and by reason of the proviso in section 4742, supra, ''that such classification shall not change the government of the county then in existence until the first Monday in January next succeeding,'' operations on the seventh class basis did not actually commence in Roosevelt county until January, 1937. The salaries of all officers within the purview of section 4741, supra, were affected as of that date, regardless of the actual date a new term of office began, or the duration thereof.

The judgments are therefore reversed and the causes remanded, with direction to the district court to enter judgments for defendants.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.