HENDRICKSON, Appellant, *v.* POWELL COUNTY et al., Respondents.

(No. 8,190.)

(Submitted April 11, 1941.   Decided April 16, 1941.)

[112 Pac. (2d) 199.]

2

Cause submitted on briefs of counsel.

*Messrs. Murphy, Garlington & Pauly,* for Appellant.

*Mr. Maurice J. MacCormick, Mr. John W. Bonner,* Attorney General, and *Mr. H. M. Gullickson,* First Assistant Attorney General, for Respondents.

*Mr. S. P. Wilson, amicus curiae.*

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, a taxpayer, brought this action to enjoin the completion of the sale of bonds of Powell county. From a judgment in favor of defendants, after their demurrer to the complaint was sustained, plaintiff appealed.

4

The sole question involved is whether the complaint states facts sufficient to constitute a cause of action. Whether the complaint is sufficient depends upon the question whether the statutes were sufficiently complied with in taking the preliminary steps resulting in the issuance of the bonds. As an exhibit to the complaint, and made a part thereof, are all the proceedings taken in connection with the bond issue. This exhibit shows that on July 2, 1940, the board of trustees of Powell County High School passed a resolution reciting that pursuant to, and under the provisions of Chapter 16, Laws of 1937, they requested the board of county commissioners to submit to the qualified electors of Powell county the question whether bonds of the county should be issued and sold in the sum of $38,489 to match government funds in the sum of $44,240, in order to erect a high school gymnasium in Deer Lodge and make improvements upon the present high school building. The board of county commissioners thereupon passed a resolution to the effect that the proposition would be submitted to the qualified electors on the 31st day of August, 1940, and directing the clerk to give proper notices of the election and notice of closing of the registration books.

The record shows that notice was given that an election would be held on the 31st day of August. The notice was published on July 11, 18 and 25, and on August 1, and a copy posted in each precinct on August 16. Notice was also published that registration for the election would close at noon on August 16. There were 1,600 persons eligible to vote on the question. A total of 756 votes were actually cast, of which 561 were in favor and 195 against the bond issue. On September 7 the board of county commissioners canvassed the returns and adopted a resolution that the bonds be sold. The notice of the sale of the bonds fixed October 11 as the date of sale, which notice was published as provided by law. The complaint shows that the sale was held on October 11 and sealed bids submitted. All the bids were rejected and a private sale was made on terms more favorable to the county. The sale has not been

completed by delivery of the bonds or payment of the purchase price, but these acts await the determination of this action.

The plaintiff by his complaint alleges that the proceedings fail to comply with applicable statutes. It is his contention that the applicable statutes are sections 1301.1 to 1301.6, Revised Codes, and sections 1224.1 to 1254.8, and alleges failure to comply with those sections in fourteen different particulars, which need not here be specifically pointed out in detail. He then alleges that the bonds are and will be illegal for failure to comply with sections 1262.12 to 1262.17, as amended, and sections 4630.1 to 4630.23, as amended, and alleges failure to comply with these statutes in eight different particulars. The complaint also alleges failure to comply with Chapter 115 of the Laws of 1937, as amended by Chapter 111 of the Laws of 1939, in five particulars.

The first point of difference between the parties depends upon which of the foregoing statutes govern the proposed bond issue. Defendants take the position that Chapter 115 of the Laws of 1937, as amended by Chapter 111 of the Laws of 1939, are the controlling statutes. If their contention is correct, then we need not consider whether there was compliance with the other sections of the statute relied upon by plaintiff.

Chapter 115 of the Laws of 1937 is known as an emergency measure and was enacted for the purpose of aiding employment by authorizing certain designated governmental agencies to make loans and to accept grants from the United States, and to enter into contracts for the construction of public works. Section 5, paragraph (b) provides that the council, commission, board of directors, board of trustees or governing body of any county, city, town, school district, public or municipal corporation, or other political subdivision or governmental agency desiring to make a loan and to issue its bonds, may originate the proceedings by the adoption of a resolution which shall set out certain things specified by the statute.

The resolution in question here, both by the board of trustees of the county high school and by the board of county commissioners, was ample to meet the conditions prescribed by

Chapter 115. Chapter 115 when originally passed expired by its own terms on December 31, 1939, but by Chapter 111 of the Laws of 1939, which was enacted before the expiration date of Chapter 115, its life was extended until March 15, 1941.

While, as before stated, the resolution in question was sufficient to meet the conditions specified in Chapter 115, on its face it purports to have been made pursuant to Chapter 16 of the Laws of 1937. The reference in the resolution to the chapter upon which the resolution was based, we think may be disregarded as surplusage, since, as we have indicated, the resolution was sufficiently broad to meet the requirements of Chapter 115. It does not appear that anyone was misled by the resolution reciting that it was made pursuant to Chapter 16 of the Laws of 1937, rather than pursuant to Chapter 115, as amended. Chapter 115 is the latest enactment and must be held to be controlling when in conflict with prior statutes.

The first point relied upon by the plaintiff to show a lack of compliance with Chapter 115 is the fact that the election was not held within the time specified by that chapter. By section 5, subdivision (b) (3) of that chapter, it is provided that the election "shall not be less than twenty (20) nor more than twenty-five (25) days from the date of the adoption of such resolution." The election here did not take place until about eight weeks after the adoption of the resolution; hence plaintiff contends that fact is fatal to the proceedings.

We have frequently held that failure to comply with some statutory detail of procedure will not invalidate a bond issue when the question is raised after the election, even though, if attacked before the election, it might have proved fatal. In other words, certain provisions may be mandatory if enforcement is sought before election but are treated as directory only, when not questioned until after election. Among the cases so holding are the following: *Goodell* v. *Judith Basin County*, 70 Mont. 222, 234 Pac. 1110; *Shekelton* v. *Toole County*, 97 Mont. 213, 33 Pac. (2d) 531; *State ex rel. Sullivan* v. *School District No. 1*, 100 Mont. 468, 50 Pac. (2d) 252; *Swaim* v. *Redeen*, 101 Mont. 521, 55 Pac. (2d) 1; *State ex rel. Jaumotte* v. *Zimmer-*

*man,* 105 Mont. 464, 73 Pac. (2d) 548; *Martin* v. *State Highway Commission,* 107 Mont. 603, 88 Pac. (2d) 41. And the holding of the election at a time different from that called for by statute will not invalidate the bonds when the question is not raised until after the election. (*Chicago, Milwaukee, St. Paul & Pac. Ry.* v. *Fallon County,* 95 Mont. 568, 28 Pac. (2d) 462.) Hence the fact that the election was not held before the lapse of twenty-five days from the date of the adoption of the resolution does not invalidate the bonds.

It is also contended that there was not compliance with ▮ Chapter 115, Laws of 1937, because that chapter expressly provides: ''Said resolution shall be entered in full in the minutes of the board .or commission, and shall show the vote by ayes and nays thereon.'' (Section 5 (b) (3).) The resolution does not show the aye and nay vote. It was signed by the chairman of the board of county commissioners and attested by the clerk. The presumption is that official duty has been regularly performed. (Sec. 10606, subd. 15, Rev. Codes.) We must presume that the resolution did receive a favorable vote, otherwise it would not have been signed by the chairman and clerk as a resolution. The omission to show the aye and nay vote is but a clerical omission which does not affect the validity of the resolution, in the absence of any showing that it did not actually have a favorable vote. The validity of the bond issue is not affected by this departure from the letter of the law.

It is contended by plaintiff that since there is maintained ▮ in Powell county a high school at Elliston in School District No. 27, the proceeds of the bond issue must be divided between the county high school and the district high school, because of section 1262.15. It is contended that section 7 of Chapter 115, Laws of 1937, reading: ''All of the laws of this State governing the issuance and sale of bonds by counties, cities, towns, school districts, and other subdivisions of the State authorized to issue bonds under this act, the levying of taxes for the payment of principal and interest thereof and payment and redemption thereof, insofar as the same are applicable and not in conflict with any of the provisions of this

8

act, shall apply to and govern all bonds issued under the provisions of this act," requires us to look to section 1262.15, and hence that the bond issue is invalid.

Section 1262.15 provides: "In any county where a county high school and also one or more accredited district high schools are maintained bonds of the county may likewise be issued in accordance with the provisions of this chapter and for any of the purposes aforesaid, the proceeds of such issue to be divided among the county high school and accredited district high school, or schools of the county. The question submitted to the electors of the county shall definitely state the amount which is to be allotted to the county high school and the amount which is to be apportioned to or among the accredited district high school, or schools; and in all such cases the amount allotted to the county high school and the amount to be apportioned among the accredited district high school or schools shall be computed upon the basis of the average daily attendance in the county high school, and in all the accredited district high schools of the county during the year preceding the submission of the question of the bond issue."

As above stated, the bond issue here in question is for the purpose of raising money to match federal funds. It is apparent that the whole project must fall if there must be a division of the funds with the Elliston district. Federal funds are available only for building purposes or public works, and so far as the record shows, the Elliston district is not in need of new buildings or improvements. To require a division of the proceeds would defeat the federal and state plan and in effect destroy the purpose of Chapter 115. In speaking on this point this court in the case of *Shekelton* v. *Toole County*, supra, had this to say:

"The Legislature in passing this Act obviously contemplated that there would be certain conditions and requirements stipulated by the federal government to be fulfilled before any money could be obtained. It was apparently foreseen that some of the conditions and requirements of the government would conflict with certain general laws of the state. No doubt that

was the reason why it was in effect declared by section 7 of the Montana Act that the laws of the state governing issuance and sale of bonds should govern only in so far as they were applicable. * * * We think it can be fairly said that the board complied with the provisions of chapter 188 as completely as it was possible for it to do and at the same time conform to the requirements prescribed by the government. Variances were necessary in order to carry out the purpose sought to be attained and to effect the general results contemplated by that act. To hold otherwise might very well result in causing our Emergency Act (chap. 24) to become a nullity. Such a result would not be in conformity with the elementary rule that statutes must be read together and, if possible, harmonized."

Failure to divide the proceeds of the bond issue with the Elliston district, under the circumstances here involved, does not affect the validity of the bonds.

The plaintiff argues that the proceedings are invalid because the issue presented to the voters contained two purposes, i. e., first, "to erect a high school gymnasium," and, second, "to make improvements upon the present high school building." He directs our attention to the case of *State ex rel. Henderson* v. *Dawson County*, 87 Mont. 122, 286 Pac. 125, 133, wherein it is said that "it is fundamental that a proceeding submitting two questions which are not naturally related in such manner that the elector must vote for or against both is invalid. (*Reid* v. *Lincoln County*, 46 Mont. 31, 125 Pac. 429; 9 R. C. L. 1059; 15 C. J. 618)."

The reason for the above rule is stated in 9 R. C. L. 1060, as follows: "But two questions cannot be treated together, to stand or fall on a single vote. It needs no argument to show the injustice of such a submission. By it several interests may be combined; an unpopular measure may be tacked onto one that is popular and carried on the strength of the latter." This reasoning would seem to prevent any combination of purposes, but the rule has been qualified to the extent that naturally related and connected improvements are considered as a single question.

10

(See 9 R. C. L. 1060, and note in 26 L. R. A. (n. s.) 666 et seq.)

Here the statute, Chapter 115, Laws of 1937, treats construction, repair and improvements of high schools as a single project. That chapter authorizes the county to undertake "(1) the construction, repair and improvement of * * * county and district high schools, and requires "the full amount required to be expended for any such purpose of *purposes*" to be set forth in the resolution.

The purposes for which the bonds are to be issued in the case ▇ at bar, if dual, are naturally related and connected. The money is to be expended on the physical plant to be used for school purposes, and affects the county high school only and not the district high school. Had the objection been raised before election and a proper showing made that a substantial number of voters was desirous of having the privilege of voting on the related and connected subjects separately, then a different question would have been presented, and this we are not now called upon to determine.

The contention of the plaintiff on this point, coming, as it does, after election, is without merit.

The next question raised is that there was not proper notice ▇▇ of the election under Chapter 115, Laws of 1937. Subdivision (c) of section 5 of that chapter provides: "The clerk of the board calling such election shall, at least twenty (20) days prior to the date when such election is to be held, post, or cause to be posted copies of said resolution in not less than three (3) public places in each voting precinct, and the posting of such copies shall take the place of, and be in lieu of, the publication of notice of election and posting notices of election required by the general election laws."

The notice of election given here was a notice posted in each precinct and published in four issues of a weekly newspaper published in Deer Lodge. None of the notices posted or published contained a copy of the resolution. Whether we would sustain the bond issue notwithstanding the failure to post copies of the resolution in the absence of the validating statute hereinafter referred to, we need not now determine. Here there

is no showing that anyone was deprived of the right to vote on account of the method of giving notice of the election; and neither is there any showing that a different result might have flowed from the election had copies of the resolution been properly posted. Under the circumstances, the failure to post copies of the resolution as commanded by the statute, as well as the other irregularities in the proceedings, are all matters which the legislature might have dispensed with originally without violating any constitutional provision. This being so, it had the right to validate the proceedings by subsequent legislation. (*Weber* v. *City of Helena,* 89 Mont. 109, 128, 297 Pac. 455.) The writer of this opinion did not agree with the conclusion in the *Weber Case* on this point. However, the irregularities relied upon here are trivial when compared with those in the *Weber Case*. Without reaffirming the conclusion in the *Weber Case* as applied to the facts there involved, we think the legislature had the right to validate the proceedings here, which it has done by Senate Bill No. 43, Laws of 1941, approved on February 26, 1941.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON, ANDERSON and MORRIS concur.