NORDQUIST, PLAINTIFF, v. FORD, GOVERNOR ET AL., DEFENDANTS.

(No. 8,229.)

(Submitted June 19, 1941.   Decided June 26, 1941.)

[114 Pac. (2d) 1071.]

Cause submitted on briefs of counsel.

*Mr. Wm. R. Taylor,* for Plaintiff.

*Mr. John W. Bonner,* Attorney General, and *Mr. Howard M. Gullickson,* First Assistant Attorney General, for Defendants.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an original proceeding to enjoin the issuance and sale of bonds authorized by Chapter 168 of the Laws of 1939, which was an Act passed by the legislature and by it referred to the people at the general election in 1940. The Act received the approval of the people. Briefly summarized that chapter provides that the legislative assembly is authorized and empowered to direct the State Board of Examiners to issue bonds in the name of the state in a sum not exceeding $500,000 in excess of the constitutional limitation of indebtedness, for the purpose of constructing, repairing and equipping the necessary buildings and acquiring the necessary grounds therefor at the Montana State Hospital for the Insane at Warm Springs. The Act provides that the bonds shall be payable serially over a period not to exceed twenty years and bear interest at four per cent. per annum. The Act provides for the levy of a tax not exceeding one-half mill to be used to pay the principal and interest on the bonds. Pursuant to that Act the legislature, by Chapter 55, Laws of 1941, directed the State Board of Examiners to issue bonds in the sum of $500,000 for the purpose stated in Chapter 168.

The plaintiff questions the validity of Chapter 168 on three grounds, which will be separately considered. The first contention is that it conflicts with Article XIII, section 2 of the Montana Constitution in that it does not itself create a debt but simply delegates to a subsequent legislative assembly authority to authorize the creation of a debt and to determine the amount thereof.

It is contended that under section 2 of Article XIII of the Constitution as interpreted in *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, 171 Pac. 755, Ann. Cas. 1918D, 1101, the law which requires the approval of the people shall itself create the debt, and plaintiff argues that the legislative power with respect to the debt shall be exhausted by the passage of the law creating it, and that if approved by the people it passes beyond

further legislative control, relying on the case of *Herrin* v. *Erickson*, 90 Mont. 259, 2 Pac. (2d) 296.

Section 2 of Article XIII provides: "The legislative assembly shall not in any manner create any debt except by law which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged; such law shall specify the purpose to which the funds so raised shall be applied and provide for the levy of a tax sufficient to 'pay the interest on, and extinguish the principal of such debt within the time limited by such law for the payment thereof; but no debt or liability shall be created which shall singly, or in the aggregate with any existing debt or liability, exceed the sum of one hundred thousand dollars ($100,000) except in case of war, to repel invasion or suppress insurrection, unless the law authorizing the same shall have been submitted to the people at a general election and shall have received a majority of the votes cast for and against it at such election."

It will be noted that this section of the Constitution prohibits the creation of a debt except by law. It should be observed too that this section does not require that the law creating the debt shall be submitted to the people. What must be submitted to the people is the law authorizing the debt. Here the debt was not created until the passage of both Chapter 168 of the Laws of 1939 and Chapter 55, Laws of 1941. Those two laws must be read together as constituting the law creating the debt. But Chapter 168, standing alone, is the law authorizing the debt, and that was submitted to and received the approval of the people at the general election. There has thus been a compliance with section 2 of Article XIII of the Constitution.

Chapter 168 gives the legislative assembly authority to fix the amount of the bond issue commensurate with the needs of the insane asylum at Warm Springs. Obviously all of the people have not available to them the information from which to determine the needs of that institution, and we believe it was proper for Chapter 168 to allow the legislative assembly authority to determine the amount of the indebtedness dependent

upon the actual needs. The people themselves have, by the adoption of Chapter 168, expressly approved a debt in a sum not exceeding $500,000. This necessarily carries with it an approval of any sum less than $500,000. We would be substituting technicality for substance to say that Chapter 168 is not sufficient authority coming from the people to warrant the issuance of the bonds in question.

General language in the opinion in the case of *Herrin* v. *Erickson*, supra, points to a different conclusion from that we have announced here. But that case had to do with a purported bond issue for the benefit of fourteen named state institutions. The law there in question did not specify how much of the bond issue should be applied to each of the several institutions. The people had no opportunity to express themselves on the subject of the division of the proceeds from the bonds among the several institutions. That part of the program was committed to future legislation. The general language appearing in the opinion in that case was appropriate under the facts there involved. The holding should be held applicable to the facts before the court.

The next point raised is that the title to Chapter 168 exceeds 100 words in contravention of section 103, Revised Codes. It is without dispute that the title to Chapter 168 contains more than 100 words, to wit, 138 words. It is contended that the requirement that the title shall not exceed 100 words is mandatory, and that the Act containing more than the required number is consequently invalid. This court has held that failure to comply with the statute in this respect will not invalidate the Act. (*State ex rel. Bonner* v. *Dixon*, 59 Mont. 58, 195 Pac. 841.) Statutory provisions may be considered mandatory when they are attacked before election, but after an election has been held they will be considered as directory only. We have repeatedly so held in other cases involving bond issues where there has been a departure from statutory law in some particular. (*State ex rel. Bonner* v. *Dixon*, supra; *Goodell* v. *Judith Basin County*, 70 Mont. 222, 224 Pac. 1110; *Shekelton* v. *Toole County*, 97 Mont. 213, 33 Pac. (2d) 531; *Swain* v.

*Redeen,* 101 Mont. 521, 55 Pac. (2d) 1; *Martin* v. *State Highway Commission,* 107 Mont. 603, 88 Pac. (2d) 41; *Hendrickson* v. *Powell County,* 112 Mont. 1, 112 Pac. (2d) 199.) Likewise this is merely a defect in the proceedings which was validated by Chapter 45, Laws of 1941. (*Hendrickson* v. *Powell County,* supra.)

The next point raised is that the proclamation of the Governor to the effect that Chapter 168 would be submitted to the electors at the general election in 1940 was not published in daily or weekly papers in each of the counties of the state as provided by sections 102 and 535, Revised Codes. It is conceded that there was failure to comply with these sections. The answer to this question rests in the fact that under the law there is no requirement that the Governor's proclamation make any reference to a measure referred by the legislature to the people. Obviously if the proclamation need make no reference to referendum measures, then failure to publish the proclamation becomes immaterial so far as this point is concerned. Section 534, Revised Codes, provides what the Governor's proclamation shall contain. It makes no reference to referendum measures.

Section 102, Revised Codes, provides: "Immediately upon the filing of any such petition for the referendum or the initiative with the secretary of state, signed by the number of voters and filed within the time required by the constitution, he shall notify the governor in writing of the filing of such petition, and the governor shall forthwith issue his proclamation, announcing that such petition has been filed, with a brief statement of its tenor and effect. Said proclamation shall be published four times for four consecutive weeks in one daily or weekly paper in each county of the state of Montana." By the plain wording of this section it refers only to referendum measures put before the people by their own petition. It has nothing to do with a measure referred by the legislature to the people. A fact indicative of the legislative intent to dispense with the publication in newspapers, in a case such as this, is the repeal in 1929 of section 537, Revised Codes 1921, which

required publication of any question to be submitted to the people, leaving section 537.1 controlling which includes constitutional amendments only. This is not a case where the legislature has failed to insure wide-spread notice. Chapter 168 stated that it should be voted on at the general election held in November, 1940. Section 105 provides for the distribution of a copy of the proposed law to every voter in the state. The requirements of this statute were carefully observed. Hence, every voter was advised that the Act would be voted on at the general election held in November, 1940.

Finding no merit in any of the contentions made by plaintiff, the relief prayed for is denied.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON, ANDERSON and MORRIS concur.