STATE OF MISSOURI at the relation of the CITY OF JEFFERSON, a Municipal Corporation of the Third Class of Cole County, Relator, v. FORREST SMITH, State Auditor.—154 S. W. (2d) 101.

Court en Banc, September 25, 1941.

*Frank E. Atwood, James A. Potter* and *John O. Bond* for relator.

*Roy McKittrick,* Attorney General, and *Tyre Burton,* Assistant Attorney General, for respondent; *John L. Graves* of counsel.

■■■ GANTT, C. J.—Original action in mandamus. The City of Jefferson seeks to compel the State Auditor to register certain bonds. The case is submitted on the pleadings. The Auditor contends that the bonds are invalid under Sec. 3, Art. X of the Constitution, which provides that "taxes may be levied and collected for (municipal) public purposes only." The rule is stated as follows:

"If the dominating motive for the erection of the hall is a strictly public use, then the expenditure for it is legal, although incidentally it may be devoted occasionally to uses that are not public. If, however, the project of the defendant city is merely colorable, masking under the pretext of a public purpose, a general design to enter into the private business of maintaining a public hall for gain, or devoting it mainly to any other than its public use as a gathering place for citizens generally, such an attempt would be a perversion of power and a nullity, and no public funds could be appropriated for it." [Wheelock v. City of Lowell, 196 Mass. 220, 81 N. E. 977, 978.]

"The true distinction drawn in the authorities is this: If the primary object of a public expenditure is to subserve a public municipal purpose, the expenditure is legal, notwithstanding it also involves as an incident an expense which standing alone, would not be lawful. But if the primary object is not to subserve a public municipal purpose, but to promote some private end, the expenditure is illegal, even though it may incidentally serve some public purpose. . . . If a public purpose is set up as a mere pretext to conceal a private purpose, of course the expenditure is illegal and fraudulent." [Bates v. Bassett, 60 Vt. 531, 1 L. R. A. 166.]

■■■ In this connection we quoted with approval from 26 R. C. L. 46, as follows:

"It may . . . be conceded that that is a public purpose from the attainment of which will flow some benefit or convenience to the public. In this latter case, however, the benefit or convenience must be direct and immediate from the purpose and not collateral, remote or consequential. It must be a benefit or convenience which each citizen of the community affected may lay his own hand to in his own right, and take into his own use at his own option, upon the same reasonable terms and conditions as any other citizen thereof." [Dysart v. St. Louis, 321 Mo. 514, 11 S. W. (2d) 1045, l. c. 1047.]

We also quoted with approval from People v. Salem, 20 Mich. 452, as follows:

"The term public purpose as employed to denote the objects for which taxes may be levied, has no relation to the urgency of the public need, or to the extent of the public benefit which is to follow. It is,

on the other hand, a term of classification to distinguish the objects for which, according to settled usage, the government is to provide, from those which by the like usage are left to private inclination, interest or liberality." [State ex rel. v. Switzler, 143 Mo. 287, l. c. 317, 45 S. W. 245.]

From the statute, the pleadings and common knowledge within the jurisdiction of this court (20 Am. Jur., pp. 48, 49, 54), we now state the facts as follows:

The Unemployment Compensation Law became effective June 17, 1937. It provided for an Unemployment Compensation Commission. Under the law the Commission employs many persons. The location of the central offices of the Commission was not mentioned in the act. In this situation the Commission assumed authority to select a location. Certain cities, including Sedalia and the City of Jefferson, through chambers of commerce or similar organizations, acquiesced in this assumption of authority by negotiating from time to time with the Commission for the location of said offices in the city repre-sented by the negotiating chamber of commerce.

In the meantime the Unemployment Compensation Law was amended (Laws of 1939, p. 926) by adding Sec. 4(a) which follows:

"The office of the Unemployment Compensation Commission shall be maintained in the City of Jefferson, *provided*, that within a reason-able time after the passage of this Act there shall be satisfactory arrangements made for the housing of the Commission at a location in said City and in a modern fireproof building appropriate for that purpose, and at a rental to be paid by the Commission, all satisfactory to the Commission and the Federal Social Security Board."

After the enactment of said amendment, negotiations with reference to the matter continued until Sedalia and the City of Jefferson were the only cities competing for the central offices of the commission. Both of said cities submitted to qualified voters the question of incurring an indebtedness to construct a building. In the City of Jefferson, and on February 27, 1940, the question was submitted in words and figures as follows:

"To increase the indebtedness of the City of Jefferson, Missouri, to the amount and sum of Two Hundred Thousand ($200,000.00) Dollars and to issue the negotiable coupon bonds of said City of Jefferson thereof, for the purpose of providing funds *for the erection of a municipal office building*, and to acquire by purchase, gift or otherwise, a site or land necessary therefor, and to authorize the levy and collection of an annual tax in addition to the other taxes provided by law, sufficient to pay the interest on said bonds as the same becomes due, and to constitute a sinking fund for the payment of the principal therefor, within twenty (20) years from the date thereof, said bonds to bear interest at not to exceed six per cent (6%) per annum." (Italics ours.)

The election authorized the indebtedness. Thereafter the Commission rejected the City of Jefferson as a location for said offices and selected Sedalia as a suitable location. We ruled that the Commission was without authority to do so. [State ex inf. v. Murphy et al., 347 Mo. 484, 148 S. W. (2d) 527.]

Thereafter and on April 15, 1941, an ordinance of the City of Jefferson provided as follows:

"That the Mayor and the City Clerk are hereby authorized and directed to cause the bonds herein described to be prepared and to execute same as herein directed, to cause the same to be registered in the office of the State Auditor, and to deliver said bonds to the purchaser thereof. The proceeds received from the sale of said bonds shall be credited to a fund hereby created and designated the 'MUNICIPAL BUILDING FUND,' and said fund shall be used exclusively for the erection of a municipal office building in said City and to acquire by purchase, gift or otherwise, a site or land necessary therefor; *said building shall include and provide office space and facilities for the Unemployment Compensation Commission of Missouri, and office space and facilities for the said City of Jefferson.*" (Italics ours.)

From the above stated facts, we find as follows: If there had been no Unemployment Compensation Law, there would have been no election submitting the question of indebtedness to construct a "Municipal Office Building." If so, the submission of the question of indebtedness to construct such a building must have been a subterfuge to obtain money to construct a building for the Unemployment Compensation Commission. Furthermore, the subterfuge is an admission that the construction of an office building for the Commission would not be for a municipal public purpose. Furthermore, the provision in the above mentioned ordinance for city offices in the building also is a subterfuge. In furtherance of the effort to evade the Constitution, a few city offices most likely would have been located in the building. Even so, the primary purpose of the indebtedness was the construction of a building for the Commission. If so, the proposed indebtedness would be in violation of the above mentioned provision of the Constitution.

The bonds under consideration are invalid, and the peremptory writ of mandamus should be denied. It is so ordered. All concur.