SIDNEY HABEL, et al., Plaintiffs and Appellants, v.
HIGH SCHOOL DISTRICT "C" of Cascade County, et
al., Defendants and Respondents.

No. 9421.
Submitted June 10, 1955. Decided June 28, 1955
Rehearing Denied January 13, 1956.
292 Pac. (2d) 349

Hall, Alexander and Burton, Great Falls, for appellants.

Arnold H. Olsen, Atty. Gen., Ted James, County Atty., Orville F. Gray, Deputy County Atty., Richard V. Bottomly, County Atty., Robert L. Word, Jr., Special Asst. Atty. Gen., and Patrick J. Gilfeather, Deputy County Atty., Great Falls, for respondents.

Mr. Edward C. Alexander, Mr. Word and Mr. Gilfeather argued orally.

MR. CHIEF JUSTICE ADAIR:

This is an appeal from a judgment of dismissal.

On rehearing granted and had this court's opinion pronounced on April 12, 1955, is ordered withdrawn and vacated and the following opinion shall stand as and for the court's opinion herein.

The suit involves two elections held in High School District ''C'' of Cascade County for the purpose of voting on a proposed site for a new high school building and on a proposed bond issue to provide funds for the construction and furnishing of such new high school building.

Litigation involving this same high school district was recently before this court in the case of Lorang v. High School District ''C'', 126 Mont. 204, 247 Pac. (2d) 477. Since the trial in the district court of the Lorang case, supra, various changes and amendments have been made in the governing statutes. See Ch. 188, Montana Session Laws of 1951, pages 414-418.

On November 9, 1953, and subsequent to the holding of the elections, Sidney Habel and seven other taxpaying electors of said High School District ''C'' of Cascade County, Montana,

filed in the district court of said county a complaint against said High School District ''C'' and its trustees and clerk as defendants, seeking an injunction perpetually enjoining and restraining the defendant high school district, its trustees and clerk from printing, selling, executing, issuing or delivering bonds of the defendant high school district in the sum of $155,000 or any part thereof, as theretofore voted by the electors of the high school district for the purpose of providing funds for the construction and furnishing of the proposed new high school building.

The complaint so filed comprises thirteen separately numbered paragraphs.

On November 18, 1953, the defendant high school district, its trustees and clerk interposed a motion to strike from the complaint a portion of paragraph VI and all of paragraphs IV, V and VIII to XIII, inclusive, on the ground that the allegations thereof are immaterial, redundant and irrelevant to the issues involved in this injunction suit.

On January 18, 1954, the district court entered an order granting defendants' above motion to strike said allegations from the complaint and allowing the plaintiffs twenty days in which to file an amended complaint.

The plaintiffs failed to file any amendments to their original complaint or to file any amended complaint and on February 11, 1954, after the expiration of the time allowed therefor, the defendant high school district, its trustees and clerk, interposed a motion for judgment denying plaintiffs the relief sought and dismissing the action.

On February 17, 1954, after hearing had, the district court granted defendants' motion for judgment and rendered and entered its judgment dismissing the action from which judgment the plaintiffs have taken this appeal.

The complaint, *inter alia,* avers: That High School District ''C'' comprises thirteen elementary or common school districts including common school district No. 5; that such high school district was organized February 23, 1946, under the laws of

Montana and ever since such date has maintained and operated a high school located at Centerville, Montana, which is in common school district No. 5; that the three school trustees named as defendants in this suit are trustees and residents of such common school district No. 5 and that they are also trustees of the defendant High School District "C." Such arrangement for trustees is authorized by the provision of R.C.M. 1947, sections 75-4601(b) and 75-4605.

The election and proceedings for the determination of the proposed bond issue and for the construction of a new high school building for the defendant high school district were not initiated by the defendant high school district, its trustees or clerk, but same were initiated by petition circulated among and signed by not less than thirty per cent of the qualified electors of the defendant high school district as is authorized by the provisions of R.C.M. 1947, section 75-4601 (b).

The complaint also avers: That the trustees of High School District "C" called an election of the qualified taxpaying electors of the defendant high school district to be held on April 4, 1953, to vote upon the question of the issuance of bonds in the amount of $155,000 for the construction and furnishing of a new high school building and also upon the question of whether the proposed new high school building should be built adjacent to the present high school building at Centerville in such district; that such election was held on April 4, 1953; that a canvass of the ballots following such election showed 221 votes for and 228 against the issuance of the bonds and 221 votes for and 202 votes against the proposed site for the building. Thus from the averments of the complaint it appears that the voters of the defendant high school district approved the proposed site of the proposed new high school building but they defeated the proposed bond issue.

The complaint further avers: That approximately 340 qualified taxpaying electors reside in common school district No. 5; that 240 qualified taxpaying electors reside in all of the other twelve common school districts of such High School Dis-

trict "C" and that approximately 200 of the electors in common school district No. 5 pay taxes only on personal property. The fact that 200 of the electors pay taxes only on personal property does not disqualify them from voting at the election for the names of such electors appear on the assessment roll the same as do those of the electors who pay taxes on real estate. See R.C.M. 1947, sections 75-3801(2) and 75-3912; Montana Constitution, Art. IX, section 2; Pioneer Motors v. State Highway Commission, 118 Mont. 333, 165 Pac. (2d) 796, and R.C.M. 1947, section 84-501, subds. 4 and 10.

The complaint further avers: That said common school district No. 5 is the pretended owner in fee of 1.47 acres of land acquired by warranty deed from Robert Habel and wife, dated March 14, 1950, and recorded November 20, 1952; that such common school district No. 5 is also the pretended owner in fee of 8.51 acres acquired by warranty deed from Katherine O. Epperson dated September 17, 1953, and recorded October 7, 1953; that the purchase or location of said tracts of land was never authorized by the electors of said common school district No. 5 and that the board of trustees of said common school district No. 5 had no power nor authority to so acquire such tracts.

In their answer brief filed in this court, the defendant high school district, its trustees and clerk, state that the above 1.47 acres are contiguous to the present high school building and such statement is neither denied, controverted nor disputed by plaintiffs either in their supplemental reply memorandum filed herein or otherwise.

There is nothing in the plaintiffs' complaint alleging or tending to show that in acquiring said tracts of land the trustees of school district No. 5 did not comply with the provisions of R.C.M. 1947, section 75-4231, subd. 2(c), which expressly authorize the trustees of high school districts to acquire title to a contiguous site without calling for a vote of the qualified electors of the district.

The complaint further avers: That when it was found that

the vote at the election held on April 4, 1953, failed to approve the proposed bond issue but that the voters had approved the proposed site for the new high school building the trustees of High School District ''C'' thereafter, by resolution adopted August 20, 1953, called another election to be held on September 12, 1953, for the purpose of again voting on the question of issuing bonds to the sum of $155,000 for the purpose of constructing a new high school building in said district; that such election was held and that thereafter the official canvass of the ballots cast at such election showed 247 votes for and 234 votes against the issuance of the bonds.

The complaint also alleges that notices of the bond election, ▉ to be held September 12, 1953, were posted only in three public places in common school district No. 5. Such posting and notices were in compliance with the provisions of R.C.M. 1947, section 75-3910. However, even if such postings were to be considered as a defect such point and objection could not successfully be raised after the holding of the election and the issuance of the bonds so authorized.

The briefs of the plaintiffs as well as those of the defendants filed in this court refer to the case of Lorang v. High School District ''C'', supra, decided August 16, 1952, involving an election in this same high school district on the question of issuing bonds for the construction and furnishing of a new high school building. In the Lorang case, supra, this court held that under section 2 of Chapter 130, Laws of 1949, the election for authority to determine the site of a new proposed high school building must be submitted at the same time as the election held for authority to issue bonds for the construction of such building. However, since then Chapter 130, Laws of 1949, supra, has been amended and section 2 thereof repealed by the enactment of Chapter 120, Laws of 1953, which became effective on February 28, 1953. Thus the election on April 4, 1953, held subsequent to the effective date of Chapter 120, Laws of 1953, was and is in compliance with the amended law Chapter 120, Laws of 1953, as was the last election held on Sep-

tember 12, 1953, for the purpose of again submitting to the electors of the high school district the proposition of issuing the bonds required for the construction and furnishing of the proposed new high school building.

Thus the site for the proposed new high school building and the issuance of the bonds to construct and furnish such new building have been legally determined by said elections so held on April 4, 1953, and September 12, 1953.

There is no allegation or showing in the complaint or otherwise indicating that the issuance of the bonds and the acquiring of the site adjacent to the present high school building in said district will create a debt in excess of the constitutional limit.

The allegations of plaintiffs' complaint which the district court ordered stricken may properly raise a political question to be decided by the electors of the high school district affected but if they do such question has been answered at the polls and with such answer neither the district court nor the supreme court was or is properly concerned on the record here presented.

Under any construction the allegations stricken and eliminated from the complaint on defendant's motion to strike raise no issue of law to be determined by the courts and the cases which plaintiffs rely upon and cite to this court do not support the contention which plaintiffs here urge. Compare Wasson v. Commissioners of Wayne County, 49 Ohio St. 622, 32 N.E. 472, 17 L.R.A. 795, and State ex rel. City of Jefferson v. Smith, 348 Mo. 554, 154 S.W. (2d) 101.

The possibility that at some remote time in the future common school district No. 5 may attempt to house its grade school in the present high school building now occupied by High School District "C" for high school purposes is not sufficient to warrant interference by the courts with the clearly expressed will of the qualified electors who have voted for and registered their approval of the bond issue here challenged by plaintiffs. See Reid v. City of Muskogee, 137 Okl. 44, 278 Pac. 339, at page 344. Nor is the legality of the bond issue impaired by the sug-

gestion that at some future time some unauthorized use may be made of another building constructed or to be constructed at a different time and under an altogether different authorization and proceeding.

The instant action was commenced in the district court on November 9, 1953, being at a time subsequent to the election of September 12, 1953, authorizing the issuance and sale of said bonds. Defendants' answer brief herein states that the bid of the state land board on the sale of the bonds was accepted on November 10, 1953, and that none of the defendants were served in this action until November 11, 1953. Such statement is not controverted in plaintiffs' supplemental reply brief herein.

In Hendrickson v. Powell County, 112 Mont. 1, 6, 112 Pac. (2d) 199, 201, being an action to enjoin the completion of the sale of bonds by the trustees of a high school, this court in affirming a judgment of the lower court in favor of the defendant trustees, said: "We have frequently held that failure to comply with some statutory detail of procedure will not invalidate a bond issue when the question is raised after the election, even though, if attacked before the election, it might have proved fatal. In other words, certain provisions may be mandatory if enforcement is sought before election but are treated as directory only, when not questioned until after election. Among the cases so holding are the following: Goodell v. Judith Basin County, 70 Mont. 222, 224 Pac. 1110; Shekelton v. Toole County, 97 Mont. 213, 33 Pac. (2d) 531; State ex rel. Sullivan v. School District No. 1, 100 Mont. 468, 50 Pac. (2d) 252; Swaim v. Redeem, 101 Mont. 521, 55 Pac. (2d) 1; State ex rel. Jaumotte v. Zimmerman, 105 Mont. 464, 73 Pac. (2d) 548; Martin v. State Highway Commission, 107 Mont. 603, 88 Pac. (2d) 41. And the holding of the election at a time different from that called for by statute will not invalidate the bonds when the question is not raised until after the election. Chicago, Milwaukee, St. Paul & Pac. Ry. Co. v. Fallon County, 95 Mont. 568, 28 Pac. (2d) 462." To the same effect see also;

Nordquist v. Ford, 112 Mont. 278, 114 Pac. (2d) 1071; Lorang v. High School District ''C'', supra.

We have carefully examined and considered the various allegations of plaintiffs' complaint seeking an injunction against the defendants and hold that, under the above cited authorities, it was not error for the district court to strike the designated allegations from plaintiffs' complaint or to thereafter render the judgment denying plaintiffs the relief sought and dismissing the action. Accordingly the judgment is affirmed.

MR. JUSTICES ANDERSON and DAVIS, concur.

MR. JUSTICE ANGSTMAN (dissenting).

This action was to enjoin the issuance and sale of bonds for the purpose of obtaining money with which to erect a new high school building for High School District ''C'' which consists of 13 elementary or common school districts, including Common School District No. 5. The only question before us is whether the court erred in striking certain allegations from plaintiffs' complaint.

The matters stricken consisted of approximately eight typewritten pages which was substantially all of the complaint. Briefly summarized those allegations are to this effect: That Common School District No. 5 has two old and antiquated grade school buildings, one at Stockett and the other at Sand Coulee, both of which are in a deplorable condition without modern heating or sanitary facilities; that the state superintendent of public instruction has warned defendants that unless more adequate grade school housing be provided, state assistance would be withheld; that on the other hand High School District ''C'' has a modern and adequate high school building at Centerville, capable of accommodating well over 100 high school pupils, whereas the present high school enrollment does not exceed 60 and the enrollment will decline in the future; that there is no need for a new high school building in School District ''C'' and the proclaimed purpose of constructing such a build-

ing is not the real and good faith purpose but is a sham and a pretense in order to make the existing high school building available as a grade school building for Common School District No. 5; that the construction of the proposed new high school building is a device to cause the taxpayers in District "C" other than Common School District No. 5 to contribute about two-thirds of the cost for the grade schools; that in so doing the trustees of District No. 5, who are also trustees of District "C" have acted arbitrarily and oppressively and abused their powers and responsibilities as representatives of the residents of the common school districts other than District No. 5; that there was no adequate remedy available to the electors in the common school districts, other than District No. 5, comprising High School District "C" for the following reasons: That Common School District No. 5 has within its boundaries approximately one-third of the taxable valuation of High School District "C" and approximately 340 qualified electors and taxpayers; that about 240 qualified electors and taxpayers reside in the other common school districts making up High School District "C" and contribute about two-thirds of the taxable valuation of High School District "C"; that in three previous elections voting precincts were established in each of the common school districts and the votes in each were tabulated separately from which it was demonstrated that the qualified electors and taxpayers who reside and vote in District No. 5 were almost solidly in favor of the bond issue and the site while those who reside in the other common school districts are almost unanimously opposed to the bond issue, which facts were well known to the defendant trustees and clerk of district "C."

From the stricken allegations it would appear that what was actually needed was adequate grade school buildings for District No. 5 and not a new high school building for District "C." Had that been accomplished directly the cost would have had to be borne by District No. 5 alone. To avoid that result, if the stricken allegations be true, it was proposed to allow the existing high school building which is alleged to be adequate for

high school needs to be used as a grade school building for District No. 5 and build a new high school building, the cost of which would be spread over the entire area of District "C."

I think if the stricken allegations be true, and at this stage of the case we must assume they are true, Mills v. Pope, 90 Mont. 569, 4 Pac. (2d) 485; Downs v. Nihill, 87 Mont. 145, 286 Pac. 410, then defendants, who were not able to construct or furnish grade school buildings under R.C.M. 1947, section 75-4601, so as to spread the cost over the entire High School District "C" directly, may not accomplish the same thing by indirection.

By striking analogy, I think the case of State ex rel. City of Jefferson v. Smith, 348 Mo. 554, 154 S.W. (2d) 101, supports this conclusion. To brush the question off as a political one which the electors of High School District "C" decided at the polls is not an adequate answer to the question because, as pointed out above, from the allegations that were stricken the electors in the sparsely settled outlying districts were so far outnumbered that the result of the election could be forecast with considerable accuracy particularly when it was the outlying district that must supply approximately two-thirds of the cost. With but few exceptions the voters in District No. 5 would vote for the project in order to spread the cost over the whole of District "C," whereas those in the other districts would vote against it, but to no avail since they are in the decided minority.

It should be noted too that the outlying districts under the law have no voice in choosing the members of the board of trustees for the high school district. R.C.M. 1947, section 75-4601.

Furthermore, the fact that the existing high school building belongs to District No. 5, if such is the case, is no answer to the question before us here. It might have called for some adjustment between District "C" and District No. 5, but would not authorize the construction of a new high school building when the existing building is adequate and when the need is not for

a new high school building for District "C" but for a grade school building for District No. 5.

Nor do I think the objection comes too late.

The majority opinion, in reliance on Hendrickson v. Powell County, 112 Mont. 1, 112 Pac. (2d) 199, and other cases of like import, holds that the attack here comes too late when it comes after the election. Those cases simply hold that a statutory rule of procedure will be declared directory only when questioned after election whereas it may be mandatory before election.

Here we are not dealing with a statutory rule of procedure but with a question that goes to the jurisdiction. Unless the proceeding is one wherein a new high school is the real and true motivating purpose there is no jurisdiction to proceed. The attack here is in time.

I think the judgment should be reversed and the cause remanded with directions to set aside the order sustaining the motion to strike and to enter an order denying it and to allow defendants a reasonable time to further plead.

MR. JUSTICE BOTTOMLY:

I concur in the above dissenting opinion of Mr. Justice Angstman.